TOLEDO, PEORIA & WESTERN RAILROAD COMPANY, a Corporation, Plaintiff-Appellee, Cross-Appellant,

v.

STATE OF ILLINOIS, DEPARTMENT OF TRANSPORTATION; John D. Kramer; J.E. Harland, and Allen Austin, Defendants-Appellants, Cross-Appellees.

Nos. 83–2638, 83–2709.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1984.

Decided Sept. 26, 1984.

Richard E. Quinn, Sp. Asst. Atty. Gen., State of Ill., McConnell, Kennedy, Quinn & Johnston, Peoria, Ill., for plaintiff-appellee, cross-appellant.

Julian E. Cannell, Kavanagh, Scully, Sudow, White & Frederick, Peoria, Ill., for defendants-appellants, cross-appellees.

Before BAUER and WOOD, Circuit Judges, and WEIGEL, Senior District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants Illinois Department of Transportation (IDOT), its secretary, John Kramer, and two. of its employees, J.E. Harland and Allen Austin, appeal a mandatory injunction directing them to restore to plaintiff Toledo, Peoria & Western Railroad Company all possessory rights as the fee simple owner of a plot of land in East Peoria. Plaintiff brought this suit under section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1982), alleging that the state had deprived it of its interest in the land without just compensation or due process, in violation of the fifth and fourteenth amendments. We hold that the federal courts lack jurisdiction over this matter as a section 1983 suit because a state agency is not a "person" within the meaning of the Civil Rights Act.

I.

In 1956, as the State of Illinois was preparing for construction of Interstate Highway 74, plaintiff conveyed to the state an easement for highway purposes over a plot

* The Honorable Stanley A. Weigel, Senior District Judge for the Northern District of California, sitting by designation.

of land in East Peoria known as Lot J. The state paid $6000 for the triangular 3.38 acres. In conjunction with construction of the interstate, part of the lot was used as a roadbed for the relocation of Camp Street.

Plaintiff repeatedly sought the state's release of the unused portion of Lot J. In 1965, the state prepared a preliminary "Plat of Vacation" as part of a possible land trade, but the trade never took place. In 1977, the state leased part of Lot J to an adjoining motel owner for use as a gravel parking lot, at $50 per month and terminable on five days notice. In 1980, the state prepared a second "Plat of Vacation" covering 2.708 acres of Lot J. The state's asking price was the appraised value of the land, $206,400.

Claiming that the state had abandoned its easement, plaintiff filed an action to quiet title in state court, which was dismissed on the ground that the Illinois Court of Claims had exclusive jurisdiction. Plaintiff also filed an action for damages in the Court of Claims, which is on hold pending resolution of this suit.

On April 29, 1981, plaintiff filed this section 1983 action against IDOT and its officials, charging that under color of state law they deprived the railroad of its interest in real property without just compensation or due process. Plaintiff originally sought both money damages and a mandatory injunction ordering the state to release its claim to the land; the district judge dismissed the prayer for damages as barred by eleventh amendment sovereign immunity, see 547 F.Supp. 140, but held that injunctive relief was not barred. Finding that Illinois law provided no adequate legal remedy, the district judge held that the state had abandoned its easement for highway purposes, and ordered it to relinquish its claim to any interest in the property. Defendants appeal.

II.

█ We begin and end our inquiry by considering whether the federal courts have jurisdiction over this section 1983 suit. Section 1983 provides:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983 (1982) (emphasis added). This court has held that "[s]tate agencies are not 'persons' for purposes of the Civil Rights Act." *Edelberg v. Illinois Racing Board,* 540 F.2d 279, 281 n. 2 (7th Cir. 1976). The Third, Fifth, and Ninth Circuits agree. *See Ruiz v. Estelle,* 679 F.2d 1115, 1137 (5th Cir.1982) (in enacting section 1983, Congress did not intend to override the traditional immunity of states and state agencies), *amended and vacated in part,* 688 F.2d 266, *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *United States ex rel. Gittlemacker v. County of Philadelphia,* 413 F.2d 84, 86 & n. 2 (3d Cir.1969) (rule that local governments are not "persons" (since overruled by Supreme Court) also applies to states), *cert. denied,* 396 U.S. 1046, 90 S.Ct. 696, 24 L.Ed.2d 691 (1970); *Bennett v. California,* 406 F.2d 36, 39 (9th Cir.) (state's immunity extends to suits under Civil Rights Act), *cert. denied,* 394 U.S. 966, 89 S.Ct. 1320, 22 L.Ed.2d 568 (1969). *See also Ohio Inns, Inc. v. Nye,* 542 F.2d 673, 676, 680–81 (6th Cir.1976) (state immunity not waived; open question whether state is "person" under section 1983), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794 (1977).[1] This

---

1. Several of the above cases, including our own *Edelberg,* rely on Supreme Court cases holding that municipalities and units of local government are not "persons" under section 1983. *See City of Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct.

2222, 37 L.Ed.2d 109 (1973); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The Court since overruled *Monroe v. Pape* in *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56

section 1983 action against IDOT, a state agency, fails for lack of federal court jurisdiction.

Plaintiff also brings this action against three state officials. A state official acting under color of state authority may be treated as a "person" under section 1983. *See, e.g., Drollinger v. Milligan,* 552 F.2d 1220 (7th Cir.1977). The official may be sued in his own right, in a suit that is not against the state, for acts outside his statutory authority or for acts within authority that is claimed to be unconstitutional. *See Larson v. Domestic and Foreign Corp.,* 337 U.S. 682, 689, 690, 69 S.Ct. 1457, 1461, 1462, 93 L.Ed. 1628 (1949). Here, plaintiff does not claim that the IDOT officials acted beyond their authority, but that their authority to refuse to quiet title in plaintiff effectively denied plaintiff just compensation and due process. The availability of a remedy in the Illinois Court of Claims, however, satisfies the requirements of the fifth and fourteenth amendments for the purposes of this case. *See Larson,* 337 U.S. at 697 n. 18, 69 S.Ct. at 1465 n. 18; *Seifert v. Standard Paving Co.,* 64 Ill.2d 109, 121, 355 N.E.2d 537, 541–42 (1976). The propriety of the officials' refusal to quiet title thus is a question only of state law. The eleventh amendment bars a federal action against state officials based on state law when the relief sought directly impacts the state. *Pennhurst State School & Hospital v. Halderman,* — U.S. ——, 104 S.Ct. 900, 917, 79 L.Ed.2d 67

(1984). Here the cause of action against the three IDOT officials would directly impact the state. It is the state that holds the disputed interest in the property, not the officials. We hold that this action nominally against the IDOT officials but in fact against the state also fails for lack of federal court jurisdiction.

### III.

This attempt to expand the purview of the Civil Rights Act of 1871 to include a suit to quiet title is innovative at best. Even if states were persons within the meaning of section 1983, we doubt that Congress intended the Civil Rights Act to turn a real property title dispute into a federal case. We reverse the district court's decision and order, and remand with instructions to dismiss plaintiff's suit. Because attorney's fees of course are not available to plaintiff under 42 U.S.C. § 1988 (1982), we dismiss plaintiff's cross-appeal.

L.Ed.2d 611 (1978). In *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Court held that *Monell* was limited to local governmental units not part of the state for eleventh amendment purposes, *id.* at 338, 99 S.Ct. at 1143, and concluded that Congress had not intended the Civil Rights Act to overturn the states' constitutionally guaranteed immunity, *id.* at 342, 99 S.Ct. at 1146. The Court also reaffirmed its language in *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), providing that "a federal court's remedial power [in a § 1983 suit brought by public aid recipients], consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief, ... and may not include a retroactive award which requires the payment of funds from the state treasury...." *Id.* at 677, 94 S.Ct. at 1362 (citations omitted). Still more recently,

the Court has indicated that eleventh amendment immunity, if not waived, would apply regardless of the nature of the relief sought. *See Pennhurst State School & Hospital v. Halderman,* — U.S. ——, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). Assuming *arguendo* that states may be "persons" under section 1983 for prospective—injunctive and declaratory—relief only, we hold that the relief here requested by plaintiff ordering the state to release its interest in real property is fundamentally different from the "prospective" relief of *Quern* (ordering state officials to send class members explanatory notice of state administrative procedures) and *Edelman* (ordering state officials to conform their future conduct to federal statutes), and more similar to "retroactive" relief—money damages—barred by *Edelman.*