The GROVE SCHOOL and Robert E. Matson, Plaintiffs,

v.

GUARDIANSHIP AND ADVOCACY COMMISSION, Elizabeth M. McKee, Mary C. Gibb, Evelyn Engler, Ruth Durkin and Hector E. Palacios, Defendants.

No. 84C2675.

United States District Court, N.D. Illinois, E.D.

Oct. 24, 1984.

John L. Gubbins, Chicago, Ill., for plaintiffs.

Paul Millichap, Asst. Atty. Gen. of Ill., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

The Grove School ("School") and its Executive Director Robert Matson ("Matson")[1] charge Guardianship and Advocacy Commission of the State of Illinois ("Commission") and its employees Elizabeth McKee ("McKee"), Mary C. Gibb ("Gibb"), Evelyn Engler ("Engler"), Ruth Durkin ("Durkin") and Hector E. Palacious ("Palacious")[2] violated Grove's First and Fourteenth Amendment rights[3] during a GAC investigation of alleged violations by Grove of state laws for treatment and education of handicapped children. Those are advanced under 42 U.S.C. § 1983 ("Section 1983"). Grove also asserts pendent common-law libel and trade libel claims against GAC.

GAC invokes Fed.R.Civ.P. 12(b)(6) to challenge Grove's Complaint on a multi-plicity of grounds. It attacks the sufficiency of the First and Fourteenth Amendment allegations generally and also asserts the following specific flaws:

1. Commission is not a "person" for Section 1983 purposes.

2. Under the Eleventh Amendment no action for monetary damages may be brought against Commission or its employees sued in their official capacities.

3. Federal courts lack authority to compel state officials to conform their conduct to state law. That bars the pendent claims.

4. Commission is a quasi-judicial board, so its officers enjoy absolute judicial immunity.

5. Allegations against Engler, Gibb and Palacious are insufficient to establish their direct involvement in a deprivation of Grove's rights.

6. Gibb and Engler may not be held liable for damages on respondeat superior grounds.

Grove of course seeks to repel all of GAC's onslaughts.[4]

---

1. Where convenient, "Grove" (employed as a singular noun) will be used to refer to School and Matson collectively.

2. Where convenient, "GAC" (employed as a singular noun) will be used to refer to Commission and its codefendants collectively. One added technical matter: Though Grove's complaint used the spelling "Palacios," this opinion assumes his own lawyer has the spelling right—hence "Palacious."

3. Of course this common usage is technically inaccurate, for all Grove's rights against state actors—including First-Amendment-type rights—derive from the Fourteenth Amendment. In this case the practice of referring directly to the underlying Bill of Rights provision, rather than more precisely to the Fourteenth Amendment (which incorporates it), is especially useful for clarity of analysis.

4. Grove has filed an affidavit and a number of exhibits along with its several memoranda. That generally represents an undesirable procedure. It creates the potential, under the last sentence of Rule 12(b), for converting the motion to dismiss into one for summary judgment under Rule 56—and this at a time when the parties most likely lack the full factual back-ground to make rounded presentations on a fully dispositive motion. On rare occasions it makes sense for a court to consider the parties' efforts to expand the facts beyond those alleged in the pleadings. Thus in *Car Carriers, Inc. v. Ford Motor Co.,* 561 F.Supp. 885 (N.D.Ill.1983) this Court was confronted with a legally insufficient complaint, a deficiency that would normally cause dismissal of the *complaint* but not of the entire *action.* But because plaintiffs there sought to salvage their insufficient allegations by supplemental assertions in their memoranda on the Rule 12(b)(6) motion, this Court (*id.* at 886 n. 2) considered those assertions to see whether the complaint could survive if plaintiffs were sent back to the drawing board. It could not, and this Court therefore took the unusual step of dismissing the entire action (a final order) rather than the complaint alone (an interlocutory order that would have permitted repleading). On appeal the dismissal was upheld, though the Court of Appeals misunderstood this Court's overly cryptic reference to "fleshing out" the complaint with the supplemental submissions. *Car Carriers,* 745 F.2d 1101, 1107 (7th Cir.1984). In any event, the present case cannot generate such a final order, and this Court has therefore opted to treat the current motions as styled by GAC: under Rule

Because GAC's motions to dismiss various defendants may be treated more readily in the context of at least one valid substantive claim, this opinion will first deal with Grove's First Amendment assertions, then turn to the objections by specific defendants, then return to the other claims in the Complaint. For the reasons stated in this opinion, GAC's motions to dismiss (1) Commission as a defendant and (2) the Fourteenth Amendment due process claims against all individual defendants are granted. Its motions to dismiss (1) the individual defendants generally, (2) First Amendment claims and (3) the pendent claims are denied.

### Facts [5]

School is a residential, medical and educational facility for the multiply handicapped and developmentally disabled. It was founded by Virginia Matson in 1958 and is now run by her son Robert.

Commission is an executive agency of the State of Illinois created to protect the rights of the mentally ill and developmentally disabled. Among its three divisions is the Human Rights Authority ("Authority"), which operates through regional boards that investigate complaints alleging violations of such persons' rights. Those regional boards are empowered to conduct hearings, subpoena witnesses and documents, release findings to the public, recommend that other agencies take punitive or remedial action, and propose legislation for the protection of the handicapped. Ill. Rev.Stat. ch. 91½, ¶¶ 714–728.

Engler is Authority's Director. McKee is Chairperson, Gibb is Vice-Chairperson and Durkin is a Board member of Authority Region 2 North (the region in which the

School is located). Palacious is an attorney employed by Commission.

Matson and his mother Virginia have run School according to a philosophy that conflicts with the prevailing philosophy of Commission and other Illinois agencies as to the proper way to handle the education of the multiply handicapped and developmentally disabled. Both Matsons and School have advocated their own philosophy and criticized Commission practices.

To punish Matson and School for such criticisms and nonconformist philosophy, GAC instituted a harassment campaign under the guise of an investigation of charges GAC knew were false.[6] GAC made numerous visits to School's campus to question students and employees, and it also made burdensome document requests, all of which disrupted School's operation.

On July 6, 1983 GAC held a public "hearing" at which it released a number of false charges against School and Matson, including charges of understaffing, improper distribution of medication and permitting sexual abuse of residents. "Hearing" is really a euphemism for what actually took place, for GAC had refused Grove's several requests for advance notice of the nature of the charges, nor did GAC give Grove any opportunity to object or respond at the "hearing" or to attach a response to the written report GAC distributed to the press. Since that time GAC has continued its investigation and has recommended that other Illinois agencies and the Illinois legislature take action against Grove, including cutting off School's funding, removing Matson as Executive Director and revoking School's and Matson's licenses.

As a result of GAC's actions and the adverse publicity, Grove has suffered dis-

---

12(b)(6), not Rule 56. It is nonetheless worth noting, to save Grove the trouble of recasting its due process charges, this opinion's views on the insufficiency of those claims would not be altered by insertion of the matters contained in the affidavit and exhibits. See n. 14.

**5.** On the current motion this Court must accept Grove's allegations as true. *Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir.1984).

**6.** Grove has given various versions of the circumstances under which the investigation began. This is the one reflected in the Complaint. Grove Supp.Mem. 3 has since conceded GAC had legitimate grounds to begin the investigation, but charges it was carried out in an abusive manner due to GAC's distaste for Grove's philosophy. This opinion's legal analysis would remain the same under either version.

ruption in providing its services, frustration in accomplishing its educational goals and a loss of reputation, enrollment and revenues. Both compensatory and punitive damages are sought from all defendants.

*First Amendment Claims*

School's and Matson's factual allegations (though not their conclusory allegations of law) advance two possible bases for asserting violation of their First Amendment rights. One surely states a valid claim: the charge that GAC's actions have been motivated by a desire to punish Grove for criticizing GAC and for advocating Grove's own philosophy of treatment of the multiply handicapped and developmentally disabled.

■■■ One major purpose of the First Amendment was to protect free discussion of governmental affairs. *Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 838, 98 S.Ct. 1535, 1541, 56 L.Ed.2d 1 (1978). It is axiomatic that government may not attempt to inhibit criticism of public policies or officials by punishing those who express critical views, at least unless the expression actually hinders the functioning of the state. *Hostrop v. Board of Junior College District No. 515,* 471 F.2d 488, 492 (7th Cir.1972) and authorities there cited. On Grove's allegations, GAC's actions are an impermissible attempt to inhibit Grove from exercising the constitutional right to criticize GAC and to advocate Grove's own philosophy of treatment. GAC has not suggested any—let alone a compelling—governmental reason for suppressing Grove's views.

GAC argues its conduct was non-actionable because GAC itself had no power to cut off funding, close down School or remove Matson as Executive Director. Whether those factors may be relevant to Grove's First Amendment charge as expressed in the Complaint is discussed below, but they miss the point of the theory now under consideration. To establish a violation of their First Amendment rights of expression, School and Matson need show only impermissible action tending to

inhibit their speech. *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982). Indeed they need not show the desire to punish or inhibit their speech was the sole motivation for GAC's action.

Even if it be assumed there was a legitimate basis for launching the investigation, Grove's Complaint may thus fairly be read to allege GAC's investigation was arbitrary, unusually burdensome and unnecessarily harassing because of GAC's disagreement with Grove's views. That states a viable First Amendment claim.

But the stated thrust of Grove's express invocation of the First Amendment lies in a different direction: the charge that GAC has interfered with Grove's constitutionally guaranteed freedom to establish and administer an educational treatment program consistent with its own philosophy and with parents' constitutional right to choose the educational philosophy that will guide their childrens' education. At least the first part of that contention also survives dismissal.

In support of its theory Grove cites *Sweezy v. New Hampshire,* 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957), *Regents of the University of California v. Bakke,* 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978) and *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). All three of those cases, together with other cases not called on by Grove but plainly relevant, keep it in court.

*Sweezy* involved the right of a university professor to resist government interrogation about his past associations and the content of a lecture he had delivered. It concerned governmental interference with an individual's expression of ideas in a university setting. As for the *Bakke* excerpt Grove cites (438 U.S. at 311–15, 98 S.Ct. at 2559–61), it considered the importance to a university of assuring itself a diverse student body and emphasized the university's freedom to design its curriculum, choose its teachers and exchange ideas. *Pierce* emphasized the right of parents to expose their children to ideas and educational philosophies other than those of the state.

**1366**

Though that right is not Grove's own, under the circumstances alleged here it implies a protectible corollary right on Grove's part to express such ideas and philosophies.[7]

Read in the most favorable light, Grove's Complaint asserts the very conduct of School's affairs in accordance with Grove's philosophy is a form of expression protected by the First Amendment. *Tinker v. Des Moines School District,* 393 U.S. 503, 505–06, 89 S.Ct. 733, 735–36, 21 L.Ed.2d 731 (1969) teaches such protection extends to "symbolic act[s]" akin to "pure speech." It is of course true that (*Clark v. Community for Creative Non-Violence,* — U.S. —, — & n. 5, 104 S.Ct. 3065, 3069 & n. 5, 82 L.Ed.2d 221 (1984)):

> 1. "[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies. To hold otherwise would be to create a rule that all conduct is presumptively expressive."
>
> 2. Even expressive conduct "may be forbidden or regulated if the conduct itself may constitutionally be regulated, if the regulation is narrowly drawn to further a substantial governmental interest, and if the interest is unrelated to the suppression of free speech."

But at this early stage of the litigation, this Court has not been afforded enough information to determine whether Grove's conduct is protected speech or to evaluate the government's interest in regulation. Grove's uncontroverted allegations supply the requisite prima facie case. From this second perspective too, then, Grove's First Amendment claims survive dismissal.[8]

All the preceding discussion proceeds from the premise Grove has adequately pleaded its First Amendment claims. Because GAC challenges the Complaint on those terms, a brief treatment of the technical pleading considerations is in order.

True enough, the Complaint's specific reference to the First Amendment was scanty.[9] It is also true that brief reference did not articulate the theory GAC violated School's and Matson's First Amendment rights by punishing them for expressing their views. But what controls is that the *factual* allegations necessary to support that unstated theory, as well as the theory Complaint ¶ 29 did specify, are present in the Complaint.

Under the teaching of *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), as recently reaffirmed in *Hishon v. King & Spalding,* — U.S. —, —, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984), a motion to dismiss may be granted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." That means this Court "is under a duty to examine the complaint to determine if the allegations provide for relief under any possible theory." *Craft v. Board of Trustees,* 516 F.Supp. 1317, 1323 (N.D.Ill. 1981); 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1357, at 601–02 (1969). Because this Court has found Grove's allegations state a cause of action, both in terms specifically identified in the Complaint and in terms implicated by its factual allegations, the Complaint cannot be dismissed.

### Proper Defendants

1. *Commission*

■ Commission argues it is not a "person" for Section 1983 purposes. That may

---

**7.** *Pierce,* 268 U.S. at 535, 45 S.Ct. at 573 permitted plaintiffs to sue because of the threatened destruction of their business caused by "unwarranted compulsion which appellants are exercising over present and prospective patrons of their schools."

**8.** Naturally this opinion's sustaining of First Amendment claims against a Rule 12(b)(6) attack implies nothing as to the likelihood or unlikelihood Grove can prove either of those claims.

**9.** Only Complaint Count I ¶ 29 specifically referred to the Amendment:

> 29. Defendants' conduct violates plaintiffs' rights as guaranteed by the First and Fourteenth Amendment to establish and conduct an educational program formed and guided by tradition and proven principles of their own choosing.

be rephrased in traditional jurisprudential terms. Because *Quern v. Jordan,* 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979) and *Pennhurst State School & Hospital v. Halderman,* — U.S. —, —, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984) have laid to rest the notion that Section 1983 abrogates the Eleventh Amendment,[10] the appropriate inquiry is whether Commission, a state agency, is protected under standard sovereign immunity analysis.

*Monell v. Department of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978) held *municipalities* are not immune from Section 1983 suits—a holding it explicitly limited to "local government units which are not considered part of the State for Eleventh Amendment purposes" (*id.* at 690 n. 54, 98 S.Ct. at 2035 n. 54). Later in the same Term the Supreme Court refused to extend the *Monell* exception to state agencies and held the Alabama Board of Corrections enjoys sovereign immunity under Section 1983. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam). *Pennhurst,* 104 S.Ct. at 908 reaffirmed the immunity of state agencies. Accord, *Toledo, Peoria & Western Railroad Co. v. Illinois,* 744 F.2d 1296 at 1298 (7th Cir. 1984). Commission is therefore immune from suit on both the Section 1983 and pendent claims.[11]

### 2. *Engler, Gibb and Palacious*

■ Engler, Gibb and Palacious move for dismissal on the premise the Complaint's allegations do not establish their direct involvement in any alleged deprivation of School's or Matson's rights. *Duncan v. Duckworth,* 644 F.2d 653, 655 (7th Cir.1981) is cited for the proposition that a defendant may not be held liable under Section 1983 unless his "direct and personal responsibility" for the alleged deprivation is proved.

But on the current motion the test is one of pleading, not proof. And on that score the Complaint alleges specific participation by each of Engler, Gibb and Palacious in GAC's investigation of School:

1. Gibb notified Grove of the July 6 public hearing (Complaint ¶ 17).

2. Engler approved the public release of GAC's charges against School (Complaint ¶ 18).

3. Palacious demanded records from School and reported School to Illinois authorities for prosecution (Complaint ¶ 16).

Complaint ¶ 17 also ascribes pre-July 6 harassing tactics of various kinds to "defendants," without particularizing just who did what.[12] All those allegations are enough to implicate the named defendants directly

---

**10.** Much of the Supreme Court's Eleventh Amendment jurisprudence is open to serious question. In fact, at the very outset it is a tour de force to have found the Amendment bars a citizen from suing *his own* state, a subject clearly omitted from the Amendment's literal language:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Yet *Hans v. Louisiana,* 134 U.S. 1, 15–18, 10 S.Ct. 504, 507–08, 33 L.Ed. 842 (1890) took that giant step, and the case law since then has built on that foundation.

**11.** School argues—without citation—Commission waived its immunity by filing complaints in its own behalf against School and thereby

stepping into the shoes of a private complainant. That argument is utterly without merit.

**12.** That kind of allegation obviously poses problems. For Rule 12(b)(6) purposes, with all reasonable inferences drawn in Grove's favor, the conduct may be ascribed to *each* defendant. That precludes dismissal of (say) Gibb, even though the only conduct *specifically* attributed to her (notifying Grove of the hearing) is innocuous. Two factors protect such a defendant:

(a) Discovery can promptly smoke out precisely what the defendant's real involvement has been, permitting anyone without direct tortfeasor involvement to extricate himself or herself from the case.

(b) If plaintiffs bring a defendant into the case without reasonable grounds, or keep a defendant in the case without justification, Rule 11 comes into play.

in the alleged harassment and thus keep them in the case.[13]

### Due Process Claims

Under *Parratt v. Taylor*, 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981) the plaintiff in a Section 1983 due process claim must show that defendants:

1. acting under color of state law
2. deprived plaintiff
3. of a right, privilege or immunity secured by the Constitution or laws of the United States
4. without due process of law.

Mere defamation, for example, is insufficient to establish a due process violation. *Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). Grove Mem. 8 originally acknowledged the *Parratt* formula, but its Supp.Mem. 2 retreated to the incorrect assertion that the only essential elements of such due process claims are that (1) the plaintiff be injured (2) by governmental action. Grove's claims fall as far short of the mark as its statement of the law.

### 1. Threats to Licenses and Funds

■ Unencumbered by logic or precedent, Grove takes the remarkable position that the deprivation of a legally protected interest is not a necessary element of a due process action. It asks that GAC be held liable for merely threatening School's and Matson's licenses, neither of which has been revoked. On that premise GAC would be guilty of depriving Matson of his "right" to engage in the profession of his choice even though he is still entitled to engage in that profession. In like manner

Grove would hold GAC liable for depriving it of state funding that Grove nevertheless continues to receive, merely because GAC's defamatory statements threatened that funding or because GAC told other state agencies to "cease doing business" with Grove. Needless to say, no action lies for such mere threats.

### 2. Prospective Business Advantage

■ Grove also contends GAC's actions have somehow deprived it of its "prospective business advantage." School fails to explain just what that interest is and the nature of the deprivation. And it offers no case support for the proposition that "prospective business advantage" is a protectible property interest.

### 3. Loss of Funding[14]

■ School says GAC's defamatory statements have deprived it of two sources of funding: grant money from the Lake County Environmental Planning Board and fixed per diem reimbursements from the State of Illinois based on the number of students enrolled. It claims (1) the Planning Board has refused to release its grant until GAC has cleared School of wrongdoing and (2) the per diem reimbursement levels have dropped in proportion to School's drop in enrollment (a product of GAC's unfavorable publicity).

Even so School has not stated a claim under the Due Process Clause. It fails as to at least two of the ingredients identified in *Parratt*.[15]

First, no protectible property interest arises unless School has a "legitimate claim

---

13. GAC also contends the individual defendants are immune from suit for other reasons that do not merit extended discussion. For one thing GAC says (correctly) respondeat superior theory does not support Section 1983 liability. But the individuals are being tagged with their own actions, not those of persons over whom they have supervisory responsibility. As another red herring, GAC also suggests—though apparently without conviction—defendants enjoy absolute judicial immunity because they are quasi-judicial officers. Of course GAC cannot be considered an adjudicative body.

14. This section draws on Grove's memorandum submissions rather than the Complaint, which does not identify any such specific harms. Despite the considerations identified in n. 4, this treatment is intended to foreclose Grove from attempting to beef up the original Complaint with the added facts and thereby reassert its due process claims.

15. Because School has not established a deprivation by GAC of protectible interests, it is unnecessary to reach the issue whether the "process" afforded by GAC was sufficient.

of entitlement" to the funds beyond an "abstract need or desire" or a "unilateral expectation." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Absent any indication of a *right* to the Board's grant, it must be assumed (as would normally be the case) such grant is discretionary. Any loss of per diem funds is even more tenuous. Their reduction is attributable entirely to a loss of students. Thus School has no right to a greater reimbursement unless it also has a well-founded right to a larger student population. Again it has alleged no such right.

Second, even if School did have a right to the lost funds, it has not shown GAC's legal responsibility for the deprivation. GAC's public and private charges may have been the catalyst for the withholding of the grant or the drop in enrollment, but as long as GAC did not exercise some control over the decision-making process of the Planning Board or the school districts that stopped referring students to School, GAC is not the legal cause of the deprivation.

In *Margoles v. Tormey,* 643 F.2d 1292 (7th Cir.1981) a physician charged members of the Wisconsin Board of Medical Examiners violated due process when they supplied derogatory information about him to Illinois medical examiners, who then denied him a license. Our Court of Appeals held the Wisconsin officials could not be said to have deprived the physician of his license, absent a showing they played an active role in the Illinois decision beyond supplying information. *Id.* at 1296–99 & 1297 n. 8. Thus so long as the decisionmaker is in a position to evaluate such derogatory information independently and to reject it if it lacks credibility, the information supplier cannot be held legally responsible for the resulting decision.

Grove has not met the burden of pleading established by *Margoles.* It has not alleged GAC played any role in the internal decisionmaking processes of the Planning Board or the referring schools, as distinct from supplying them with information that they were free to disregard. Grove does urge GAC controlled the Planning Board's decision, but not in the *Margoles* sense. Instead the "control" cited by Grove is the Planning Board's refusal to release grant money without a favorable report from GAC. In conventional tort law analysis, the Planning Board has opted to make GAC a "but for" factor in the deprivation,[16] but that does not render GAC a "legal" or "proximate" cause. Because the Planning Board is free to disregard GAC reports about School, GAC is not legally responsible for the loss. And the same tort law analogy applies a fortiori to the independent determinations by the referring schools.

### Pendent Libel Claims

■ Earlier this year *Pennhurst,* 104 S.Ct. at 921 held the Eleventh Amendment stripped federal courts of jurisdiction over a pendent claim by Pennsylvania citizens to require Pennsylvania mental health officials to conform their conduct to state law. GAC argues from *Pennhurst* that sovereign immunity protects not only Commission but also the individual defendants from Grove's state law libel claims.[17]

*Pennhurst,* 104 S.Ct. at 917–19 taught pendent jurisdiction does not override sovereign immunity. Each pendent claim in a Section 1983 case must be separately examined from an Eleventh Amendment standpoint to determine whether the federal court has jurisdiction. *Id.* at 919. That line of analysis will be pursued here.

By its terms the Eleventh Amendment prohibits only suits against a state. To

---

**16.** There is no indication the Planning Board is required by state law or some other independent source to withhold funding without GAC approval.

**17.** Grove did not even respond to this contention. That has unfairly placed the burden on

this Court and its law clerk to do Grove's lawyer's work for him, but this Court is even more loath to permit a lawyer's default to induce an incorrect decision. Grove has thus prevailed on this issue in spite of itself.

block end runs around that prohibition, suits that name individual state officials are also barred when the state is the real party in interest. *Pennhurst,* 104 S.Ct. at 908; *Toledo, Peoria & Western,* at 1299. Consequently complaints against such individuals (like Grove's Complaint in this case) are subject to a two-step analysis:

1. May the suit be deemed a suit against the state?

2. If so, does the suit nevertheless fall within the exception to the Eleventh Amendment carved out by *Ex parte Young,* 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908)?

*Pennhurst*'s rewrite of the Eleventh Amendment unequivocally foreclosed the *Young* exception in this case when it decided *"Young* and *Edelman* are inapplicable in a suit against state officials on the basis of state law" (104 S.Ct. at 911).[18] Thus the only issue here is whether Grove's libel claims may be deemed suits against the state.

For that purpose the effect of the relief sought determines whether a suit is against the sovereign. *Id.* at 908, 913. *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted) summarized the standards:

The general rule is that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," ... or if the effect of the judgment would be "to re-strain the government from acting, or to compel it to act."

In literal terms Grove's Complaint asks damages (both compensatory and punitive) from the individual defendants. But because neither party has addressed the possibility of state indemnification of Commission's employees, this Court cannot now determine the extent (if any) to which the claims nominally asserted against individuals are in fact levelled against the state. If the employees are entitled to be indemnified against compensatory damage awards, a judgment for those damages "would expend itself on the public treasury," so the claim would be barred by the Eleventh Amendment.

It would however be surprising to find the individuals entitled to indemnification from the state for any award of punitive damages. If they are not, a claim for such damages would plainly be asserted strictly against the individuals and would not be affected by the Eleventh Amendment.

In sum it is really impossible, on the parties' incomplete submissions to date, to decide whether this Court has jurisdiction over the pendent claims under *Pennhurst.* GAC's motion in that respect is denied without prejudice.[19]

### Conclusion

All Grove's claims against Commission, and all its due process claims against the individual defendants, are dismissed. GAC's motion to dismiss is denied in all other respects, and the individual defend-

---

**18.** *Ex parte Young* made state officials amenable to suit in their official capacities for unconstitutional acts. According to *Pennhurst,* the *Young* exception is necessary to enable federal courts to vindicate federal rights. 104 S.Ct. at 910. That justification is said to disappear when state law violations (such as the libel claims here) are at stake. *Id.* at 911.

**19.** This decision does not rest on the ultra vires concept, under which an official may be sued for actions taken outside the scope of his or her authority. *Pennhurst,* 104 S.Ct. at 908 n. 11, 911–17 narrowed that doctrine into near oblivion over a strong dissent by Justice Stevens, *id.* at 928–29. Now a state officer may be said to act ultra vires only by acting "without any au-thority whatever." Tortious acts and errors in the course of official duties are therefore not necessarily ultra vires. *Id.* at 908 n. 11. Nonetheless *Pennhurst* and the cases on which it relies do not necessarily foreclose the possibility that *intentional* torts are ultra vires, even if committed in the course of official duties under some semblance of authority. It is thus possible the libel alleged by Grove is ultra vires even though it came in the course of an investigation and publication of charges apparently authorized by the Guardianship and Advocacy Act. This opinion need not explore the outer reaches of *Pennhurst,* however, because of the text's determination on other grounds that Grove's libel claims are not suits against the state.

ants are ordered to answer the surviving claims on or before November 5, 1984. This Court's October 31 status report date is vacated and replaced by a status report date of November 28 at 9:15 a.m.