**MOTOROLA, INC., Plaintiff,**

v.

**KIMBALL INTERNATIONAL, INC., Defendant.**

No. 84 C 3429.

United States District Court, N.D. Illinois, E.D.

Dec. 12, 1984.

Robert P. Cummins, Chicago, Ill., Michael J. Stolarski Motorola, Inc., Schaumburg, Ill., for plaintiff.

Theodore W. Anderson, Jr., William M. Wesley, J. Bradford Leaheey Neuman, Williams, Anderson & Olson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Motorola, Inc. ("Motorola") has moved in this patent infringement action:

1. under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss the second counterclaim (the "Counterclaim") filed by Kim-

ball International Company ("Kimball"), charging an antitrust violation under Sherman Act § 1 (15 U.S.C. § 1) and Clayton Act § 4 (15 U.S.C. § 15), and

2. under Rule 12(f) to strike Kimball's affirmative defense of patent misuse (the "Affirmative Defense," asserted in Ans. ¶ 15).

For the reasons stated in this memorandum opinion and order, Motorola's motion to dismiss is granted (albeit only for the present) and its motion to strike is denied.[1]

### Facts

Motorola owns United States Patent No. 3,546,355 (the "Patent"), relating to certain technology embodied in electronic organs. In 1981 Motorola began to negotiate license agreements with allegedly infringing manufacturers. By January 1984 Motorola had reached an agreement with Nippon Gakki Seizo Kabushiki Kaisha ("Nippon Gakki"), the world's largest organ manufacturer (known in the United States under the tradename Yamaha). On April 20, 1984 Motorola sued five companies (including Kimball) that had not taken licenses.

Both the Counterclaim and the Affirmative Defense are predicated on an alleged conspiracy between Motorola and Nippon Gakki to establish discriminatory royalty rates. Kimball charges all the current infringement suits are designed to coerce it and other manufacturers into license agreements requiring royalty payments significantly higher than those of Nippon Gakki. Motorola's Rule 12(b)(6) motion asserts the Counterclaim has failed properly to allege injury from Motorola's conduct. Its Rule 12(f) motion contends the Affirmative Defense is insufficient because a defense of misuse cannot be based solely on proposed license terms.

### Kimball's Counterclaim

#### 1. Rule 12(b)(6) Principles

Motorola supplemented its motion-supporting memorandum with a two-page affidavit by Vincent J. Rauner ("Rauner"), Motorola's Vice President for Patents, Trademarks and Licensing. Kimball has responded with its own affidavit and the contention that under Rule 12(b) this Court "must" now treat the motion as one for summary judgment, with the Rauner affidavit as Motorola's entire factual presentation. That misreads Rule 12(b) (emphasis supplied):

> If, on a motion asserting the defense numbered (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to *and not excluded by the court,* the motion shall.be treated as one for summary judgment and disposed of as provided in Rule 56, *and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.*

Were this Court inclined to treat the present motion as one under Rule 56, it would at the least allow Motorola to make a more thorough presentation. But—consistent with the discretion clearly intended by the Rule's "not excluded by the court" language and the Advisory Committee Note on the 1946 amendment to Rule 12(b) —this Court elects not to convert the motion into one under Rule 56.

Nor is that decision appropriate for this day and date only. On a substantial number of occasions (most recently in *Grove School v. Guardianship and Advocacy Commission,* 596 F.Supp. 1361, 1363 n. 4 (N.D.Ill.1984)) this Court has said such a conversion procedure is usually undesirable at the outset of a case, in substantial part because at such an early stage the parties generally lack the full factual background to make rounded presentations on a fully dispositive motion. That is true in spades where, as here, the pleading alleges a com-

---

1. Motorola has also moved for sanctions under Rule 11 and 28 U.S.C. § 1927, charging the Counterclaim and Affirmative Defense lack any factual or legal basis. This Court's disposition of the substantive motions renders unnecessary any consideration of the requested sanctions. Indeed, if the propriety of any argument in this proceeding may be called into question, it could only be the propriety of the Rule 11 motion itself.

plex antitrust conspiracy.[2] Consideration of the motion—as any Rule 12(b)(6) motion—will therefore be limited to the pleadings (*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), with Kimball's well-pleaded allegations accepted as true. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984).

### 2. Legal Sufficiency

■ Clayton Act § 4 (emphasis added) clearly requires an allegation of injury in a private antitrust claim:

> Any person *who shall be injured in his business or property* by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of the suit, including a reasonable attorney's fee.

Only Counterclaim ¶ 32 (emphasis added) attempts any reference to such injury:

> Upon information and belief, Motorola has combined and conspired with Nippon Gakki and perhaps other favored licensees to maintain a discriminatory royalty rate for Kimball and other manufacturers of electronic organs above that charged to Nippon Gakki and perhaps other favored licensees, giving the favored licensees an unfair and illegal competitive advantage in the electronic organ market *to the detriment and injury of Kimball* and other manufacturers of electronic organs and unreasonably restrains [sic] trade in the electronic organ market and substantially lessens [sic] competition in the electronic organ market.

Motorola correctly contends that allegation is insufficient as a matter of law because (1) it is conclusory and (2) non-licensee Kimball could not have been injured solely by a discriminatory royalty rate.

Antitrust claimants must normally allege a specific injury to business or property caused by the alleged violations. *Carlson Cos. v. Sperry and Hutchinson Co.*, 507 F.2d 959, 961 (8th Cir.1974); *Beegle v. Thomson*, 138 F.2d 875, 881 (7th Cir.1943), *cert. denied*, 322 U.S. 743, 64 S.Ct. 1143, 88 L.Ed. 1576 (1944). Kimball suggests in support of its conclusory allegation that injury may be presumed in a discriminatory licensing case because the licensee by definition has paid too much in royalties.

But Kimball is forced to concede (Mem. 8) such a per se rule is inapplicable here because it never took a license and thus never paid any royalties.[3] That being so, Kimball cannot assert injury from discriminatory royalty rates alone. And that means Counterclaim ¶ 32's allegation, which focuses solely on the royalty rates, is insufficient to support a claim. In like manner, Motorola's mere prosecution of this infringement action does not by itself cause the requisite antitrust injury. *Bendix Corp. v. Balax, Inc.*, 471 F.2d 149, 154, 159 (7th Cir.1972).

Instead Kimball's antitrust claim must be ascribed to injury caused by *both* Motorola's courses of action, which force Kimball into a trilemma. *Dairy Foods, Inc. v. Dairy Maid Products Corp.*, 297 F.2d 805, 808 (7th Cir.1961) explained the predicament of a patent infringement defendant in Kimball's position:

> The injury [to defendant in its business or property] is the necessity that defendant make a choice among alternatives each of which has an adverse economic or financial impact on its ... business. It was allegedly compelled either to cease production with consequent loss of sales of the product, pay tribute with consequent increase in production cost, or incur the financial burden of expenses incident to the defense of litigation. Each of these alternatives had its particular adverse economic or financial effect

---

**2.** Even had this Court opted for Rule 56 treatment, summary judgment would be unavailable, for the affidavits clearly create a genuine issue as to the central facts of this case.

**3.** In this respect Kimball is actually better off than Nippon Gakki.

on defendant's ... business. To place a person in such a situation is an injury to his business.

And *Dairy Foods, id.* at 809 held the requisite injury was triggered by the patentee's filing of its infringement suit—"the compulsion that forced the choice."

All the *elements* of injury identified in *Dairy Foods* are thus posed in this action.[4] Nonetheless the requisite *allegation* that the combination of those elements injured Kimball is lacking from the Counterclaim. Judge Marovitz' dictum in *Alberto-Culver Co. v. Andrea Dumon, Inc.,* 295 F.Supp. 1155, 1159 (N.D.Ill.1969) fits this situation perfectly:

> The simple fact which distinguishes this case from *Dairy Foods* is the counterclaim in *Dairy Foods* specifically alleged the expenditure of time and money in defending the patent litigation while in the instant action no such allegation has been made [citing *Dairy Foods*]. All that has been alleged by defendant in paragraph [32, in this case] of the counterclaim is that it has been injured. That is simply not enough under *Dairy Foods* or any other standard.

Consequently the Counterclaim as it now stands is wanting in purely formal terms. But it is equally plain Kimball can readily make the allegations necessary to bring itself within *Dairy Foods.* Leave is therefore granted to file a properly amended counterclaim on or before December 20, 1984.

---

**4.** Motorola seeks to rely on the post-*Dairy Foods* decision in *LaSalle Street Press, Inc. v. McCormick & Henderson, Inc.,* 445 F.2d 84, 95 (7th Cir.1971) as supporting its position for dismissal. But *LaSalle Street Press, id.* at 96 highlights the distinction between the good-faith filing of an infringement action (involved in that case) and the *Dairy Foods* situation of infringement actions brought "as a tool of an established pattern of punitive and otherwise monopolistic practice." At least on Kimball's allegations, Motorola's conduct fits the *Dairy Foods* mold and not that of *LaSalle Street Press.*

**5.** Motorola argues from dictum in *Honeywell* (1974 Trade Cas. (CCH) at 95,941) that it purged

## Kimball's Affirmative Defense

■ No such flaw attaches to the Affirmative Defense, which asserts the Patent is invalid due to its misuse as part of Motorola's discriminatory licensing scheme. Motorola's Rule 12(f) motion advances the theory that a patent misuse defense cannot be predicated merely on *proposed* license terms (rather than an executed license agreement). But the cases cited by Motorola (the brief statements in *Benz v. Celeste Fur Dyeing & Dressings Corp.,* 57 F.Supp. 895, 899 (D.C.N.Y.1944), *aff'd,* 156 F.2d 510 (2nd Cir.), *cert. denied,* 329 U.S. 736, 67 S.Ct. 101, 91 L.Ed. 635 (1946) and *Honeywell, Inc. v. Sperry-Rand Corp.,* 1974 Trade Cas. (CCH) ¶ 74,874, at 95,541 (D.Minn.1973)) provide no support for that proposition, and this Court's independent research similarly reveals no supporting authority.

On the contrary, the cases indicate patent misuse may be established much more easily than an antitrust violation. *Bendix,* 471 F.2d at 154–55; *Transitron Electronic Corp. v. Hughes Aircraft Co.,* 487 F.Supp. 885, 892–93 (D.Mass.1980) (and cases cited), *aff'd,* 649 F.2d 871 (1st Cir.1981). Moreover no allegation of specific injury (the only gap in the Counterclaim) is necessary in a claim of patent misuse (*Morton Salt Co. v. G.S. Suppiger Co.,* 314 U.S. 488, 494, 62 S.Ct. 402, 406, 86 L.Ed. 363 (1942)). It thus follows that Kimball has pleaded a valid misuse defense.[5]

## Conclusion

Kimball's second counterclaim is dismissed without prejudice and with leave to

any misuse of the Patent by filing this infringement suit. *Honeywell's* statement on that issue is neither worthy of reliance nor applicable here. Not only is the statement dictum and unsupported by the cases it cites, but it does not purport to state a general rule that infringement suits purge misuse as a matter of law. Such a general rule would contradict common sense because—as *Dairy Foods, Bendix* and other cases recognize—infringement suits can be part and parcel of an unlawful conspiracy to restrain trade or monopolize a market. Whether a "purge" has occurred therefore involves questions of fact that cannot be dealt with on a pleading motion.

amend on or before December 20, 1984. Motorola is ordered to answer the amended second counterclaim (assuming its timely filing) on or before December 31, 1984. Motorola's motion to strike Kimball's affirmative defense of patent misuse is denied.