**Maria RUBACHA, by her parent and next friend, Janina RUBACHA, Plaintiff,**

**v.**

**Gregory L. COLER, et al., Defendants.**

**No. 84 C 9887.**

United States District Court, N.D. Illinois, E.D.

April 15, 1985.

Steven Lubet, Robert Miller (senior law student), Chicago, Ill., for plaintiff.

Neil F. Hartigan, Atty. Gen. of Ill., Jeffrey W. Finke, Lance T. Jones, Asst. Attys. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Maria Rubacha ("Maria"), a mentally retarded minor, sues Department of Children and Family Services ("DCFS") Director Gregory Coler and other DCFS officials and employees under both 42 U.S.C. § 1983 ("Section 1983") and Illinois common and statutory law, based on injuries Maria sustained when she was beaten by other minor residents of DCFS-operated Dickens Shelter. Defendants now move to dismiss under Fed.R.Civ.P. ("Rule") 12(b)(1)[1] and 12(b)(6). For the reasons stated in this memorandum opinion and order, their motion is denied.

### Facts[2]

Before September 1983[3] Maria lived with her mother Janina Rubacha ("Janina") in Illinois, though Maria's father lived in Poland. When he died in September, Janina traveled to Poland for the funeral, leaving Maria in the care of a relative. During Janina's absence Maria became sick and the relative took her to a doctor, who thought Maria was not being cared for properly and notified DCFS. On September 13 the Cook County Circuit Court's Juvenile Division granted DCFS's petition that Maria be placed in temporary custody at DCFS's Dickens Shelter for lack of parental care.

DCFS has adopted a policy under which children in DCFS custody for that reason are housed in the same facilities as children in DCFS custody due to misbehavior (Complaint ¶ 14). Maria was housed in an area of Dickens Shelter that contained five or more girls, some of whom were there because of misbehavior involving violence (*id.* ¶¶ 16, 17). On October 3 some of those other children attacked and beat Maria severely, inflicting multiple and severe bruises (*id.* ¶ 21).

Maria alleges DCFS knew or should have known the other children had previously committed acts of violence and posed a danger to Maria, who could not take care of herself (*id.* ¶¶ 15, 17). She charges de-

---

1. Defendants' invocation of Rule 12(b)(1) rests on sovereign immunity concerns rather than lack of subject matter jurisdiction in the usual sense. Their jurisdictional label draws strength from the statement in *Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 1363, 39 L.Ed.2d 662 (1974) that an Eleventh Amendment defense "partakes of the nature of a jurisdictional bar."

2. As with every motion to dismiss, this Court accepts as true the well-pleaded factual allegations of the complaint, with all reasonable factual inferences drawn in Maria's favor. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984). That approach of course involves no actual findings of fact.

3. Because all the operative events occurred during 1983, the rest of this opinion will simply omit the year designation.

fendants exhibited a deliberate and reckless disregard for her safety by:

1. failing to segregate children in custody for misbehavior from other children; and

2. failing adequately to protect Maria after she had been placed in an area with violence-prone children.

Complaint Count I charges defendants' conduct breached Section 1983 by infringing on Maria's First, Fifth, Eighth and Fourteenth Amendment rights.[4] Count II charges their conduct constituted negligence and gross negligence under Illinois common law and also violated the Illinois Juvenile Court Act (the "Act"), Ill.Rev.Stat. Ch. 37, ¶ 701–2(1). Defendants move to dismiss on three grounds:

1. Maria has not stated a claim under Section 1983.

2. All her claims are barred by sovereign immunity.

3. Defendants' qualified immunity shields them from suit.

Defendants alternatively move for abstention because of the sensitive local concerns in Illinois' operation of its juvenile facilities.[5]

*Substantive Due Process Standards*

■ Maria's appeal to the First, Fifth and Eighth Amendments is plainly misplaced. No conceivable application of the First Amendment has been identified by her counsel; by its terms the Fifth Amendment's Due Process Clause applies only to actions by the federal government (and the identical clause in the Fourteenth Amendment protects against misconduct by state actors); and the Eighth Amendment applies only to convicted criminals (*Ingraham*

*v. Wright,* 430 U.S. 651, 664–71, 97 S.Ct. 1401, 1408–12, 51 L.Ed.2d 711 (1977)).

■ On the other hand, Maria plainly states a viable claim for violation of the substantive due process protections of the Fourteenth Amendment. Over ten years ago *Spence v. Staras,* 507 F.2d 554, 557 (7th Cir.1974) upheld such a claim against state hospital officials where a retarded child inmate in that hospital had been repeatedly beaten and was ultimately killed by fellow inmates. In *Spence* the defendants were alleged to have known the defenseless plaintiff had been beaten at least twenty times in the past, yet failed to take steps to protect him.

More recently *Youngberg v. Romeo,* 457 U.S. 307, 315–16, 102 S.Ct. 2452, 2458, 73 L.Ed.2d 28 (1982) has confirmed that the mantle by which the Fourteenth Amendment shields involuntary committed mental patients affords at least as much protection to their bodily security as the Eighth Amendment's "callous indifference" standard (*Estate of Davis v. Johnson,* 745 F.2d 1066, 1070–71 (7th Cir.1984)) guarantees to prisoners. *Society for Good Will to Retarded Children v. Cuomo,* 737 F.2d 1239, 1245–46 (2d Cir.1984) extended *Youngberg* to *any* person in state custody and held the State was required to exercise accepted "professional judgment" in safeguarding the security of children in its custody.

Because Maria's beating was an isolated incident, *Spence* is not on all fours with her case. Nor does she specifically allege a departure from "accepted professional practice" to bring herself within the *Society for Good Will* formulation. But she does allege defendants were aware of the threat the other children posed to her safety and were deliberately and recklessly in-

---

**4.** Of course all such infringements by state actors must necessarily encroach on the Fourteenth Amendment alone (in this case its Due Process Clause), rather than the other Amendments invoked by Maria. Nonetheless this Court, as always, follows the conventional and convenient (though inexact) usage of referring to the underlying Bill of Rights guaranties.

**5.** Defendants' abstention argument is based on their inaccurate characterization of Count I as

essentially a state law claim calling for an interpretation of the Act and the state's regulations. But Count I asserts a violation of Fourteenth Amendment standards and does not turn in any respect on whether defendants' conduct comported with state law. Thus this case is no more a candidate for abstention than any of the myriad prisoner Eighth Amendment claims that are routinely heard in the federal courts.

different to her right to bodily security. Under the *Youngberg* formulation and the liberal pleading regime of *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), reaffirmed in *Hishon v. King & Spalding,* —— U.S. ——, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984), that is enough to state a Section 1983 claim.

### Sovereign Immunity

#### 1. Count I

■ For many years the Eleventh Amendment has been interpreted—however incorrectly [6]—to bar suits against a state by citizens of that state. *Hans v. Louisiana,* 134 U.S. 1, 15–18, 10 S.Ct. 504, 507–508, 33 L.Ed. 842 (1890); *Edelman,* 415 U.S. at 662–63, 94 S.Ct. at 1355–56. Nor is that doctrine limited to suits in which (say) the "State of Illinois" is named in the caption.[7] *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted) recapitulated the familiar principles under which a state official is deemed "the State" in Eleventh Amendment terms:

> The general rule is that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," ... or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act."

Finally, the naming of a public officer in his or her official capacity imposes liability on the employing entity (*Brandon v. Holt,* —— U.S. ——, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985)), thus rendering the suit

against a state official qua official equivalent to one against the State itself.

There has been one enduring exception to those rules: *Ex parte Young,* 209 U.S. 123, 160, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908), which made state officials amenable to suit in their official capacities for unconstitutional acts. But *Edelman,* 415 U.S. at 677, 94 S.Ct. at 1362 (reaffirmed in *Pennhurst,* 104 S.Ct. at 909) has limited the relief available under *Ex parte Young* to prospective injunctive relief.

Seeking to take shelter in the Eleventh Amendment, Defendants' R.Mem. 4–5 mischaracterizes Maria's complaint as one seeking relief against the officials (1) solely in their official capacities (2) for unintentional omissions. Then defendants urge (*id.* at 5) the *Ex parte Young* exception is inapplicable here because it extends only to *intentional* acts and because Maria asks for retroactive damages of the type barred by *Edelman.*

■ Those arguments miss the mark by a wide margin. Had Maria sued defendants only in their official capacities, this would indeed be a suit against the State, requiring an analysis of *Young* and *Edelman.* But the Complaint's caption says in so many words that each defendant is sued in his or her *individual* capacity as well. *Kolar v. County of Sangamon,* 756 F.2d 564, 568 (7th Cir.1985) teaches such a designation by a plaintiff is controlling.[8] Clearly Maria is seeking recovery from the individuals out of their own pockets.

In that respect this case resembles *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). There the fam-

---

6. See Justice Brennan's dissent in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 921–22, 79 L.Ed.2d 67 (1984) and this Court's like comment in *Grove School v. Guardianship and Advocacy Comm'n,* 596 F.Supp. 1361, 1367 n. 10 (N.D.Ill.1984).

7. DCFS itself, as a state agency, is the "State" for Eleventh Amendment purposes, but it has not been sued here.

8. Astonishingly defendants' counsel has just written a letter to this Court, after briefing had been completed, citing *Kolar* as though it sup-

ported defendants' position. This Court, which had noted *Kolar* when it first came down last month, had already called *Kolar* to the attention of its law clerk (then preparing a first draft of this opinion) as a case upholding Maria's claim. It may be that the singular myopia of defendants' counsel is caused by the fact the Illinois Attorney General (acting for defendants here) is so accustomed to representing the State as such that the obvious individual vs. official distinction escapes him—even when articulated as clearly as in *Kolar.*

ilies of three students killed by Ohio National Guard troops during an anti-Vietnam demonstration at Kent State University sued the Ohio governor, the university president and various officials and soldiers of the National Guard for money damages. *Scheuer, id.* at 238, 94 S.Ct. 1687 (citations omitted, emphasis in original) held—in terms equally applicable to this case—the Eleventh Amendment was no bar to such an action:

> While it is clear that the doctrine of *Ex Parte Young* is of no aid to a plaintiff seeking damages from the public treasury, ... damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.

> \* \* \* \* \* \*

Analyzing the complaints in light of these precedents, we see that petitioners allege facts that demonstrate they are seeking to impose individual and personal liability on the *named defendants* for what they claim—but have not yet established by proof—was a deprivation of federal rights by these defendants under color of state law. Whatever the plaintiffs may or may not be able to establish as to the merits of their allegations, their claims, as stated in the complaints, given the favorable reading required by the Federal Rules of Civil Procedure, are not barred by the Eleventh Amendment.

■ Nor does the State's possible indemnification of defendants under Ill.Rev.Stat. ch. 127, ¶ 1302 transform this action into one against the State.[9] To the extent Maria sues defendants as individuals, she seeks to recover only from them and to bind only them. Illinois' decision to indemnify its employees is entirely voluntary. As this Court's colleague Judge Prentice Marshall held in *McAdoo v. Lane*, 564 F.Supp. 1215, 1219 (N.D.Ill.1983), and as our Court of Appeals suggested in a quite different context in *Liberles v. County of Cook*, 709 F.2d 1122, 1135 (7th Cir.1983), Illinois' indemnification obligations are only consequent upon defendants' liability and have no effect on the nature of the principal action.[10]

To hold otherwise would give the State carte blanche to provide a meaningless kind of paper protection—granting an "indemnification" that would, by its very existence, destroy the liability to which the indemnity purportedly extends. That would cost the State nothing, and it would unconscionably insulate State employees from all liability for their tortious and unconstitutional actions. After all, the Eleventh Amendment was designed to protect sovereign States, not individual citizens.

2. *Count II*

■ Precisely the same analysis applies to Count II's pendent state law claims. As this Court stated in *Grove School*, 596 F.Supp. at 1370, the threshold and decisive inquiry as to pendent claims is whether they may be deemed suits against the State. *Pennhurst*, 104 S.Ct. at 917. *Grove School* raised but did not decide the

9. Ill.Rev.Stat. ch. 127, ¶ 1302(c) provides state employees are *not* indemnified for damages resulting from "intentional, wilful or wanton misconduct." At this early stage of the proceedings, it is impossible to predict whether any of the defendants will be held liable for such misconduct and hence unprotected by the indemnity statute. Thus even if indemnification could ultimately call the Eleventh Amendment into play, raising the bar at this point would be premature.

10. *McAdoo*, 564 F.Supp. at 1219 put it this way: If plaintiffs obtain a judgment against defendants, under the eleventh amendment that judgment will bind defendants only. The eleventh amendment requires only that nothing in this court's judgment compel the state to pay the judgment. If defendants seek to compel the state to indemnify them, they will have to file a separate action in state court; nothing in our judgment would bind the state. Since the indemnity statute is enforceable against the state if at all in state court, and since our judgment will in no way compel the state to indemnify plaintiffs, this action is not against the state within the meaning of the eleventh amendment; it is brought only against named individuals and hence is not barred by the amendment. Every court to consider the effect of such indemnity statutes under the eleventh amendment has reached the same conclusion.

effect (if any) of the Illinois indemnification statute on that determination. That question is really resolved by the discussion of Count I: That statute cannot transform a suit against individuals into a suit against the State. Thus the Eleventh Amendment poses no bar to Count II either.

### Qualified Immunity

■ As an additional ground for dismissal, defendants argue they are shielded by qualified executive immunity. They cite *Davis v. Scherer,* — U.S. —, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984) for the proposition that damages may not be recovered from an official with qualified immunity unless the right the official allegedly violated was "clearly established at the time of the conduct at issue." But defendants cannot really argue—given the June 1982 *Youngberg* decision and a number of earlier similar decisions at other levels— the right of a juvenile in state custody to bodily security had not been clearly established by October 1983.

### Conclusion

Maria has stated valid causes of action under Section 1983 and state law as well. Those claims are barred neither by the Eleventh Amendment (except to the extent defendants are sued in their official rather than their individual capacities) nor by defendants' qualified immunity.

Defendants' motion to dismiss is therefore denied, except that the Complaint caption's reference to defendants in their official capacities is stricken. They are ordered to answer the Complaint on or before April 26, 1985.