Sandra KOLAR, Plaintiff-Appellee,

v.

COUNTY OF SANGAMON OF the
STATE OF ILLINOIS,
Defendant-Appellant.

No. 84–2262.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1984.

Decided March 4, 1985.

Mary Lee Leahy, Leahy & Leahy, Springfield, Ill., for plaintiff-appellee.

Dwight O'Keefe, Springfield, Ill., for defendant-appellant.

Before CUMMINGS, Chief Judge, CU-DAHY, Circuit Judge, and FAIRCHILD, Senior Circuit Judge.

CUMMINGS, Chief Judge.

This is an appeal by defendant County of Sangamon, Illinois, from the district court's

grant of summary judgment in favor of plaintiff Sandra Kolar. The court below held the defendant liable for a judgment obtained by plaintiff versus the Sheriff of Sangamon County in a separate action and for attorney's fees and costs arising out of the earlier suit. For the reasons set forth below, we affirm.

## I

Plaintiff Sandra Kolar filed suit in the United States District Court for the Central District of Illinois on February 29, 1980, against Martin Gutschenritter, the Sheriff of Sangamon County at all times relevant to the complaint, and his administrative assistant, Greg Sullivan. Kolar alleged liability under 42 U.S.C. § 1983, charging that she was improperly denied appointment as deputy sheriff on the basis of both sex discrimination and her refusal to engage in certain political activities. *Kolar v. Gutschenritter and Sullivan*, No. 80 C 3064 (C.D.Ill. June 25, 1981). The State's Attorney's Office of Sangamon County determined that it was obligated to defend Gutschenritter and Sullivan under Section 5, Chapter 14 of the Illinois Revised Statutes. That Section reads:

> The duty of each State's Attorney shall be: * * * (4) To defend all actions and proceedings brought against his county, or against any county or State officer, in his official capacity, within his county.

ILL.REV.STAT. ch. 14, § 5 (1979). The State's Attorney then discovered that there was a conflict of interest within that office and retained a Springfield, Illinois, law firm to represent Gutschenritter and Sullivan as a Special Assistant State's Attorney. The County also acted pursuant to ILL.REV. STAT. ch. 85, § 2–302 (1979), which allows a local public entity an election to "[a]ppear and defend against" suits versus the entity's employees allegedly arising out of acts or omissions within the scope of employment. Defendant County paid the law firm

representing Gutschenritter and Sullivan the sum of $9,794.97.

On September 25, 1981, the district court entered judgment on the jury's verdict for plaintiff, Sandra Kolar, and against Sheriff Gutschenritter in the amount of $9,900 actual damages and $100 punitive damages. Attorney's fees in the amount of $8,575 and costs in the amount of $1,060.12 were also awarded to plaintiff pursuant to 42 U.S.C. § 1988. The jury found co-defendant Sullivan not liable. Kolar then made a written demand upon Sangamon County to pay the judgment, attorney's fees and costs obtained against Gutschenritter, but the County refused the request. On March 26, 1982, plaintiff filed this suit against Sangamon County in the United States District Court for the Central District of Illinois. On June 22, 1983, that court granted plaintiff's motion for summary judgment as to Count IX of the complaint (App. A–18) which not only asserted the defendant County's liability to pay the judgment, attorney's fees and costs arising from *Kolar v. Gutschenritter*, but also alleged a deprivation of property in violation of the Fourteenth Amendment and entitlement to damages under 42 U.S.C. § 1983 because of the County's refusal to pay (Docket Entry of June 22, 1983, and R. Item 28).[1] On October 3, 1983, two orders were docketed: the first awarded plaintiff attorney's fees in her suit against the County; the second clarified the date from which 6% interest was to run on plaintiff's judgment in the 1980 suit and the date interest was to run on the award of attorney's fees and costs (First Docket Entry of October 3, 1983, and R. Item 28).

On appeal defendant solely contests its liability arising out of plaintiff's 1980 suit against Sheriff Gutschenritter. Although plaintiff asserted below that the County was obligated to pay the judgment against Gutschenritter under both ILL.REV.STAT. ch.

---

1. A ruling on the constitutional arguments concerning payment of judgment was reserved (R. Item 28). We dismissed defendant's appeal on May 2, 1984, because the district court had ruled only on Count IX of the complaint. On

June 29, 1984, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the district court entered final judgment as to Count IX and determined there was no just reason for delay, thus giving us jurisdiction over this appeal.

85, § 9–102 (1979) and ILL.REV.STAT. ch. 34, § 301.1 (1979), Judge Ackerman's June 22, 1983, docket entry relies solely on the former statute as supporting liability. On appeal plaintiff continues to rely on both Illinois statutes as a basis for the County's liability and further alleges liability under a *Monell* theory, *i.e.*, that the actions of the Sheriff represented the official policy or custom of Sangamon County and that the County, therefore, is directly liable. See *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611.

## II

Defendant's challenge to the summary judgment order raises two principal issues: (1) whether a judgment or settlement obtained pursuant to Section 1983 constitutes a "tort judgment or settlement" for purposes of ILL.REV.STAT. ch. 85, § 9–102, so as to subject Illinois local government entities to liability for the Section 1983 violations of their employees, and (2) whether Sheriff Gutschenritter was sued in his official, as opposed to his individual, capacity so as to subject Sangamon County to liability for attorney's fees and costs arising from a Section 1983 judgment versus a local government official under *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 256, 57 L.Ed.2d 522 (1978). Defendant's briefs do not challenge the October 3, 1983, award of attorney's fees and costs to plaintiff stemming from the present suit.

**Local Governmental Entity Liability Under Illinois Law for Section 1983 Judgments Against Government Employees.**

■ Judge Ackerman was eminently correct in concluding that ILL.REV.STAT. ch. 85, § 9–102 authorizes recovery of a Section 1983 judgment obtained against a local public entity employee, acting in the scope of employment, from the relevant local entity. It is unnecessary to consider, there-

fore, whether liability here may be transferred to a government entity via Illinois employee indemnity law, ILL.REV.STAT. ch. 34, § 301.1, or exists under the *Monell* theory summarized *supra*.[2] Illinois law provides that

A local public entity is empowered and directed to pay any tort judgment or settlement for which it or an employee while acting in the scope of his employment is liable in the manner provided in this Article.

ILL.REV.STAT. ch. 85, § 9–102 (1983). Sangamon County makes no claim that Sheriff Gutschenritter was not acting within the scope of his employment and Judge Ackerman expressly concluded in his June 22, 1983, docket entry that the Sheriff was so acting. Defendant simply argues that the Section 1983 judgment obtained versus Gutschenritter was not a "tort judgment" within the meaning of Chapter 85, Section 9–102. The County offers no Illinois caselaw consonant with its view and we see no need to read the statute so narrowly. Plaintiff's Section 1983 judgment obtained against Sheriff Gutschenritter is a "tort judgment" under Illinois law.

Apart from initially observing that Section 1983 actions are commonly referred to as "constitutional torts," see, *e.g.*, *Guenther v. Holmgreen*, 738 F.2d 879, 881 (7th Cir.1984), we note that the Supreme Court in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), expressly stated that Section 1983 "was intended to '[create] a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Id.* at 253, 98 S.Ct. at 1046 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976)). *Piphus* ruled that the common-law tort requirement of proof of actual injury should apply in the Section 1983 context. *Id.*, at 264, 98 S.Ct. at 1052.

---

**2.** If a plaintiff succeeds in showing official policy or custom under a *Monell* theory, the Supreme Court's recent decision in *Brandon v. Holt*, ⸺ U.S. ⸺, 105 S.Ct. 873, 83 L.Ed.2d 878

(1985) makes it clear that recovery may be had from the local public entity without expressly naming it as a defendant in the suit.

In the only case expressly in point, *Evans v. City of Chicago*, 522 F.Supp. 789, 792 n. 3 (N.D.Ill.1980), affirmed on other grounds, 689 F.2d 1286 (7th Cir.1982), District Judge Grady held that "the word 'tort' [as utilized in Chapter 85, Section 9–102 and adjoining Section 9–104] is broad enough to reach a § 1983 judgment or settlement," [3] although the issue was not raised by the parties. The *Evans* decision pointed out that other courts have interpreted the words "tort" or "tortious injury" to include conduct actionable under Section 1983 in the context of construing state long-arm statutes. See *Overby v. Johnson*, 418 F.Supp. 471, 472–473 (E.D. Mich.1976); *Mandelkorn v. Patrick*, 359 F.Supp. 692, 693–694 (D.D.C.1973). This Court's prior conclusions that statutory civil rights actions should not be characterized as *common-law* torts, *Blake v. Katter*, 693 F.2d 677, 680 (7th Cir.1982); *Movement for Opportunity and Equality v. General Motors Corp.*, 622 F.2d 1235, 1242–1243 (7th Cir.1980), and that the two-year Illinois tort action statute of limitations is inapplicable to such actions, *Beard v. Robinson*, 563 F.2d 331, 336 (7th Cir.1977), certiorari denied, 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978), are not contrary to our holding today that Section 1983 is a statutory species of tort.

▇▇▇ The $100 in punitive damages awarded Kolar also may be recovered from the County under the above-quoted Illinois statutory Section 9–102. As a general rule, local public entities are immune from punitive damage awards in civil rights actions. See *City of Newport v. Fact Concerts*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1270 (7th Cir.1984). It is clear, however, that a local government entity's "immunity from liability, including liability for punitive damages, may be waived by federal or state law." *Bell*, 746 F.2d at 1271; see *Owen v. City of Independence*, 445 U.S. 622, 647–648, 100 S.Ct. 1398, 1413–

1414, 63 L.Ed.2d 673 (1980). This Court held in *Bell* that the indemnity afforded government employees under Wisconsin law waived the City of Milwaukee's immunity with regard to suits by City employees seeking indemnification for punitive damage awards obtained against them under 42 U.S.C. § 1985. 746 F.2d at 1271. Section 9–102 similarly waives the defendant County's immunity from Section 1983 punitive damage awards. The failure of Section 9–102 expressly to authorize recovery of a punitive damage award from a local public entity in Illinois does not bar such a remedy. In *Bell* we ruled that the Wisconsin indemnity statute, which applied generally to all "judgments," authorized indemnity suits for punitive damage awards against a local public entity. *Id.* Section 9–102 also fails to distinguish between compensatory and punitive damages, and where, as in *Bell* and here, the local entity fails to argue that the statute should be read so narrowly, local entity immunity is waived as to both types of damages.

**Characterization of the Underlying Suit**

Under the Supreme Court's ruling in *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), attorney's fees and costs assessed under 42 U.S.C. § 1988 (the Civil Rights Attorney's Fees Awards Act of 1976) in suits brought against public officials in their official capacity may be collected " 'either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).' " *Id.* at 700, 98 S.Ct. at 2578 (quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 5 1976 U.S.Code Cong. & Admin.News (1976) p. 5913). Awards against an official sued in his individual capacity, however, are not governed by statute and continue to be awarded " 'under the traditional bad faith standard,' " *Hutto*, 437 U.S. at 700, 98 S.Ct. at 2578, 57 L.Ed.2d at 540, and presumably are to be paid out of the official's own pocket.

---

**3.** In *Evans* we did not consider the district court's interpretation of the term "tort judgment    or settlement."

Thus the County's liability for attorney's fees and costs was appropriate if Sheriff Gutschenritter was sued in his official capacity.

■ Although the 1980 complaint (Exhibit A to R. Item 10 and reproduced in the appendix to defendant's brief) is of little help in determining the nature of the suit versus Gutschenritter, we are satisfied that the action was brought versus the Sheriff and his administrative assistant in their official capacities and conclude that the County is liable for fees and costs arising from the 1980 suit.[4] The complaint in that suit nowhere uses the words "official capacity" or "individual capacity" and the name of the case sets forth the defendant Sheriff's proper name without an attached job title. At several points in the complaint, however, plaintiff refers to Gutschenritter as "Defendant, Sheriff of Sangamon County," and the conduct described in the complaint relates solely to the Sheriff's authority or duty to appoint and promote employees.

Both this Court and the Fifth Circuit have characterized as "official capacity" suits those Section 1983 actions that fail to designate expressly the nature of the suit through utilization of the terms "official capacity" or "individual capacity," but which list in the case name of the complaint the official's job title, i.e., "Gerald M. Sonquist, Kenosha County Sheriff" and "Carl Thomas, Sheriff." See Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 n. 12 (7th Cir.1983); Barrett v. Thomas, 649 F.2d 1193, 1201 (5th Cir.1981), certiorari denied, 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (1982); Collins v. Thomas, 649 F.2d 1203, 1205 (5th Cir.1981), certiorari denied, 456 U.S. 936, 102 S.Ct. 1992, 72 L.Ed.2d 455 (1982). The fact that plaintiff Kolar referred to defendant Gutschenritter as Sheriff of Sangamon County solely in the body of her complaint rather than in the case name is a minor distinction. It is sufficient that the complaint notifies the official and the rele-

vant public employer of the nature of the suit. Contrast Saxner v. Benson, 727 F.2d 669, 673 (7th Cir.1984) (action characterized as against defendant in his individual capacity where body of complaint stated "[a]ll defendants are sued in their individual capacities"). See also Holly v. City of Naperville, 571 F.Supp. 668, 673 (N.D.Ill. 1983) (where a complaint alleges conduct of a public official, acting under color of state law, giving rise to liability under Section 1983, court will assume official was sued in an official capacity and only in that capacity).

The County's actions in defending Gutschenritter and his administrative assistant Sullivan convince us that the public entity was aware of and understood the nature of the action. As noted earlier, the County elected to defend Gutschenritter pursuant to ILL.REV.STAT. ch. 85, § 2–302, which authorizes such representation where a "claim or action is instituted against an employee * * * of a local public entity based on an injury allegedly arising out of an act or omission occurring within the scope of his employment * * *." The State's Attorney's office of Sangamon County determined that it was obligated to defend the Sheriff under ILL.REV.STAT. ch. 14, § 5, which requires such defense in cases of "actions * * * brought against * * any county or State officer, in his official capacity" (emphasis supplied). In view of the County's actions, it cannot seriously contend now that it did not understand the complaint to present a suit versus Sheriff Gutschenritter in his official capacity.

In order to avoid further confusion on this issue in the future, where a complaint alleges that the conduct of a public official acting under color of state law gives rise to liability under Section 1983, we will ordinarily assume that he has been sued in his official capacity and only in that capacity, as in Holly v. City of Naperville, supra. If a plaintiff intends to sue public officials in their individual capacities or in both their official and individual capacities (see Nekol-

---

4. Because the parties did not raise the issue and because the defendant is liable for attorney's fees and costs under Hutto, it is unnecessary to consider defendant's liability under a theory

that construes the term "judgment" in ILL.REV. STAT. ch. 85, § 9–102 to include such fees and costs.

ny v. Painter, 653 F.2d 1164, 1170 (7th Cir.1981), certiorari denied, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982); *Holly*, 571 F.Supp. at 673), he should expressly state so in the complaint.[5]

Finally we address the County's argument that the award of punitive damages[6] to plaintiff demonstrates that the Sheriff could not have been acting in his official capacity and that, therefore, the original suit could not have been brought against Gutschenritter in such capacity. Defendant's argument is that a punitive damage award requires or implicates conduct outside the scope of an employee's duties and that, presumably, an official capacity suit brought versus a defendant whose conduct would support a punitive award is doomed to failure. Assuming, *arguendo*, the correctness of the County's argument, *i.e.*, that the award of punitive damages is wholly inconsistent with an official capacity suit,[7] the truth of the defendant's proposition would not mean that plaintiff's suit against Gutschenritter was not in fact brought versus the Sheriff in his official capacity nor that the County did not understand the action to be brought against him in such a capacity. Despite this apparent incongruity, it is clear that the County, as we have held, did understand the original

action as an official capacity suit. To the extent plaintiff's theories of recovery and damages were inconsistent in *Kolar v. Gutschenritter*, the appropriate place to raise the incongruity was at the original trial and subsequent appeal of *Gutschenritter* (subsequently dismissed by the Sheriff) and not here.

The decision of the district court is AFFIRMED.

---

**5.** We add a note of caution to plaintiffs seeking recovery to be satisfied out of a state treasury. Eleventh Amendment problems still lurk for suits against state officials brought against those officials solely in their official capacities. See *Owen v. Lash*, 682 F.2d 648, 654–655 (7th Cir. 1982).

**6.** The punitive damage award was allegedly supported by a jury finding that Gutschenritter knowingly violated Kolar's rights by discriminating on the basis of sex or political activities in promotion decisions (Plaintiff's Br. 24; Defendant's Br. 6) as alleged in the complaint in her 1980 suit.

**7.** Without engaging in a detailed discussion of the matter, the bringing of a suit against a public official in an official capacity would not necessarily appear to preclude an award of punitive damages against that official. Under *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), a jury may assess punitive damages in a Section 1983 action when the defendant's conduct involves "reckless or callous indifference to the federally protected rights of others." *Id.* at 56, 103 S.Ct. at 1640. It

seems that a public official whose reckless actions give rise to liability under Section 1983 could still be acting within the scope of employment or in an "official capacity." See *Barrett v. Thomas,* 649 F.2d at 1203, and *Collins v. Thomas,* 649 F.2d at 1206 (Judge Brown concurring) (although defendant's conduct, described as a "crass, flagrant violation of established constitutional rights" and as "flagrant, spectacular unconstitutional acts," would appear to support an award of punitive damages, action was characterized as against defendant in his official capacity). Cf. *Barker v. Norman,* 651 F.2d 1107, 1121, 1121 n. 18 (5th Cir.1981) (only egregious acts performed by a defendant public official would mean that he was not acting within the scope of his authority nor within his official capacity and therefore would not be entitled to claim a qualified immunity in the first instance). Actions taken by a public official with malice or "evil motive or intent," however, *Smith v. Wade,* 461 U.S. at 56, 103 S.Ct. at 1640, would preclude a finding that the official acted in an official capacity.