
Samuel COLEMAN, Plaintiff,

v.

Gordon FRIERSON, Defendant.

No. 82 C 4460.

United States District Court,
N.D. Illinois, E.D.

Sept. 30, 1985.
On Motion for Reconsideration
Oct. 28, 1985.

Supplement to Memorandum On
Reconsideration Oct. 30, 1985.

Abraham N. Goldman, Abraham N. Goldman & Assoc., Ltd., Chicago, Ill., for plaintiff.

Aldus S. Mitchell, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Samuel Coleman ("Coleman") prevailed against each of three defendants (the only ones remaining in the case) in this 42 U.S.C. § 1983 ("Section 1983") action, brought to challenge (a) Coleman's firing as Special Investigator for the Village of Robbins ("Robbins") and (b) his later arrest on charges of impersonating a police officer. After entry of a default judgment in Coleman's favor as to liability, a jury trial was held solely to determine Coleman's damages. Verdicts were returned:

1. against former Robbins Mayor Marion Smith ("Smith") for $250,000 in compensatory damages for physical, mental and emotional injury and $100,000 in punitive damages;

2. against former Robbins Police Chief Gordon Frierson ("Frierson") for $125,000 in compensatory damages for physical, mental and emotional injury and $100,000 in punitive damages;

3. against Robbins for $34,000 in lost wages and $14,842 in interest; and

4. against Frierson and Smith jointly and severally, for $3,000 in compensatory damages for legal and medical expenses.

After this Court (in the "Opinion," 607 F.Supp. 1566 (N.D.Ill.1985)) denied (1) defendants' alternative motions for a judgment notwithstanding the verdict or for a new trial and (2) Smith's and Frierson's motions to vacate the default judgment, Smith and Frierson appealed those rulings. During the pendency of the appeal, Coleman, Smith and Frierson filed a joint motion in this Court to require Robbins to indemnify Smith and Frierson pursuant to Ill.Rev.Stat. ch. 85, ¶ 9–102 ("Section 9–102"). This Court raised a question as to its jurisdiction to decide the indemnification motion, given the pendency of the appeal, and suggested that movants consider applying to the Court of Appeals for a limited remand to deal with the indemnification question. They did so, and the Court of Appeals entered such an order September 3, 1985, also staying proceedings on the appeal pending action by this Court. For the reasons stated in this memorandum opinion and order, the joint motion for indemnification is denied.[1]

Robbins' five-page submission is appallingly shallow, dealing not at all with any of the conceptual difficulties posed by the motion. It chooses in principal part[2] to appeal to this Court's discretion and sense of fairness. It urges indemnification is not proper in a case such as this, where Smith and Frierson were as much to blame for entry of the default judgment as Robbins was. Allowing indemnification here, Robbins Mem. 4 says, would set a dangerous precedent:

> Simply put, that rule would provide that where a governmental officer is named a defendant in a civil rights case in both an individual and official capacity and a default judgment is entered against that officer, his governmental employer must indemnify him irrespective of his conduct and diligence in participating in the defense of the action.

Under such a regime, Robbins continues, the officer would have every incentive to frustrate the progress of the lawsuit in the hope of a default judgment.

■ Whatever the merits of that argument,[3] the issue of indemnification is not a function of this Court's views of fairness or of the exercise of its discretion as an equity chancellor. Instead it is purely a matter of state law. Section 9–102 speaks in mandatory terms:

> A local public entity is empowered and directed to pay any tort judgment or

1. It is worth pausing in the context of this opinion to address a topic discussed at length in the Opinion, 607 F.Supp. at 1572–74. Smith and Frierson claimed they were entitled to vacate the default judgment against them because they and Robbins were represented by the same counsel, despite what have now emerged as differing interests. See *Dunton v. County of Suffolk*, 729 F.2d 903, *modified on other grounds*, 748 F.2d 69 (2d Cir.1984). It is certainly true that the present dispute among the defendants exemplifies the potential for conflicts of interest in *Dunton*-type circumstances. But as the Opinion, 607 F.Supp. at 1573–74 stressed, one (though not the only) critical factor in legal terms was that no conflict had been *realized* (let alone perceived) when the default judgment was entered. There was nothing that then indicated any prospect that Smith and Frierson required representation separate from Robbins'. Indeed, it was several months after each individual defendant had retained his own counsel before the indemnification question was raised for the first time.

2. Before it turns to the argument referred to in the text, Robbins Mem. 2 advances a totally inapt contention based on *Monell v. Department*

*of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Of course the predicate for a public entity's *direct* liability under Section 1983 is wholly irrelevant to the question of its derivative liability under a state indemnification statute.

3. Robbins' suggested specter of large-scale bad faith conduct appears to be more the product of an advocate's imagination than a sober prediction based on a careful assessment of litigant behavior. While indemnification may operate anomalously in the unusual situation where (as here) a jury assesses small damages against the public entity and large amounts against its officers, that result is certainly no more anomalous than the more frequent situations where the officers alone are sued, or the public entity is sued and then dismissed out, or it is sued and wins entirely. In each of those circumstances the public employer must indemnify even though it has no direct liability. As the text discussion in this opinion indicates, Section 9–102 makes no special provision for such cases.

settlement for which it or an employee while acting in the scope of his employment is liable in the manner provided in this Article.

And if there were any question as to the scope of Section 9–102 in the context of a Section 1983 action, that question has received a definitive answer earlier this year in *Kolar v. County of Sangamon*, 756 F.2d 564 (7th Cir.1985). After categorizing Section 1983 actions as giving rise to "tort judgments," *Kolar, id.* at 567 went on to deal with the potential coverage of punitive damage awards by Section 9–102:

> As a general rule, local public entities are immune from punitive damage awards in civil rights actions. See *City of Newport v. Fact Concerts*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1270 (7th Cir.1984). It is clear, however, that a local government entity's "immunity from liability, including liability for punitive damages, may be waived by federal or state law." *Bell*, 746 F.2d at 1271; see *Owen v. City of Independence*, 445 U.S. 622, 647–648, 100 S.Ct. 1398, 1413–1414, 63 L.Ed.2d 673 (1980). This Court held in *Bell* that the indemnity afforded government employees under Wisconsin law waived the City of Milwaukee's immunity with regard to suits by City employees seeking indemnification for punitive damage awards obtained against them under 42 U.S.C. § 1985. 746 F.2d at 1271. Section 9–102 similarly waives the defendant County's immunity from Section 1983 punitive damage awards. The failure of Section 9–102 expressly to authorize recovery of a punitive damage award from a local public entity in Illinois does not bar such a remedy. In *Bell* we ruled that the Wisconsin indemnity statute, which applied generally to all "judgments," authorized indemnity suits for punitive damage awards against a local public entity. *Id.* Section 9–102 also fails to distinguish between compensatory and punitive damages, and where, as in *Bell* and here, the local entity fails to argue that the statute should be read so narrowly,

local entity immunity is waived as to both types of damages.

■ Of course both compensatory and punitive damages, to be capable of indemnification, remain subject to the statutory concept of "scope of his employment." *Kolar, id.* at 569 n. 7 went on to explain how that concept interacts with the potentially inconsistent premises underlying punitive damage awards:

> Without engaging in a detailed discussion of the matter, the bringing of a suit against a public official in an official capacity would not necessarily appear to preclude an award of punitive damages against that official. Under *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983), a jury may assess punitive damages in a Section 1983 action when the defendant's conduct involves "reckless or callous indifference to the federally protected rights of others." *Id.* at 56, 103 S.Ct. at 1640. It seems that a public official whose reckless actions give rise to liability under Section 1983 could still be acting within the scope of employment or in an "official capacity." See *Barrett v. Thomas*, 649 F.2d [1193] at 1203 [5th Cir.1981], and *Collins v. Thomas*, 649 F.2d [1203] at 1206 [5th Cir.1981] (Judge Brown concurring) (although defendant's conduct, described as a "crass, flagrant violation of established constitutional rights" and as "flagrant, spectacular unconstitutional acts," would appear to support an award of punitive damages, action was characterized as against defendant in his official capacity). Cf. *Barker v. Norman*, 651 F.2d 1107, 1121, 1121 n. 18 (5th Cir.1981) (only egregious acts performed by a defendant public official would mean that he was not acting within the scope of his authority nor within his official capacity and therefore would not be entitled to claim a qualified immunity in the first instance). Actions taken by a public official with malice or "evil motive or intent," however, *Smith v. Wade*, 461 U.S. at 56, 103 S.Ct. at 1640, would preclude a finding

that the official acted in an official capacity.

What that analysis teaches for present purposes is that a public entity remains liable under Section 9–102 for the reckless acts of an individual officer but *not* for his malicious acts. To see on which side of that line this case falls, with its default judgment as to liability, we look first to the allegations of Coleman's Complaint (which are deemed admitted by the default). Complaint ¶¶ 4–5 charge Smith and Frierson in both their individual and their official capacities. Complaint ¶ 7 includes the conclusory allegation that both acted "pursuant to their authority," equivalent to acting within the scope of their employment. But Complaint ¶ 28 alleges their acts were "wanton, willful and malicious."

Coleman's Complaint, of course, antedated *Kolar*, and it did not anticipate the *Kolar* distinction between an official's malicious acts and his acts in the "scope of his employment" (which can embrace merely reckless conduct). In those terms Complaint ¶ 28 looks in one direction, while Complaint ¶ 7 points toward the polar opposite.

Thus the Complaint alone does not answer which side of *Kolar*'s n. 7 dichotomy is operative for indemnification purposes. However, that possible dilemma resolves itself in light of the issues posed to the jury at the damages trial (after all, the measure of the claimed indemnification is what the jury awarded in terms of the case as presented to it). It is not the jury instructions that do the job: They told the jury it could award punitive damages against either individual defendant on a finding he had acted "with malicious intent or in willful and wanton disregard of plaintiff's rights" (given that alternative, the jury's punitive damages award could have reflected reckless misconduct rather than malice on the part of Smith or Frierson or both, in which case Robbins would be obliged to provide indemnification under Section 9–102 and *Kolar*). It was rather the factual summary provided the jury

with the approval of Coleman's counsel—a summary drawn from the Complaint following the entry of the default judgment— that makes clear individual defendants' unconstitutional conduct must be considered malicious:

> 19. The acts alleged above in paragraphs 10–16 by Defendant Smith and other unknown others were malicious and done with the intent to injure, harass, and discredit Plaintiff. After the incident involving Defendant Frierson alleged in paragraphs 16 and 17, Defendants Smith and Frierson conspired to further injure, harass and discredit Plaintiff.
>
> 20. On June 22, 1979, Plaintiff was arrested and charged with wrongfully impersonating a police officer.
>
> *   *   *   *   *   *
>
> 22. On or about July, 1979, the above wrongful and malicious charge was dismissed by a judge at the Circuit Court of Cook County.

Nor is that characterization accidental. It is solidly confirmed by the factual substance of Coleman's claims. He maintained Robbins itself—through its Board of Trustees ("Board")—appointed him to the post of Special Investigator and gave him his mandate. Smith and Frierson then deliberately thwarted Board's purposes by persecuting him because Smith was afraid Coleman would uncover Smith's past criminal conduct. Against that background— again to be taken as true by virtue of the default judgment—the term "malicious" was not used lightly.

Those then were the factual premises of the jury's award of both compensatory and punitive damages. Even in the matrix of a damages trial following a default judgment on liability, it would be impermissible to impute to the jury a finding of reckless misconduct based on the Janus-like allegations of the Complaint or of the punitive damages instruction. Whatever might have been established in the course of a trial on the merits, the facts deemed established for purposes of the damages trial leave no doubt that Smith and Frier-

son acted maliciously. Indeed the Opinion, 607 F.Supp. at 1576 confirmed that before the current issue was ever raised:

> But the question of good faith was foreclosed by the default judgment as to liability—a judgment that included the fact of their having acted out of malice (and hence not in good faith).[4]

It follows under *Kolar*, 756 F.2d at 569 n. 7 that Smith and Frierson were not acting in their official capacities, despite the conclusory allegations to that effect in *part* of the Complaint. They are therefore not entitled to indemnification against Robbins under Section 9–102. Accordingly the joint motion of Coleman, Smith and Frierson [5] for indemnification by Robbins is denied.

## ON MOTION FOR RECONSIDERATION

Samuel Coleman ("Coleman") has moved for reconsideration of this Court's September 30, 1985 memorandum opinion and order (the "Opinion"). Though some of the arguments advanced in Coleman's supporting memorandum are imaginative, they fail on the core issue that really controls the conclusion reached in the Opinion.

Of course the question of malice vel non on the part of individual defendants Marion Smith ("Smith") and Gordon Frierson ("Frierson") is not the *reason* for the inquiry made in the Opinion. Coleman Mem. [2][1] is quite right that the indemnification question hinges instead on the scope of Ill.Rev. Stat. ch. 85, ¶ 9–102 ("Section 9–102")— which is in turn a function of the statutory concept of "scope of employment." But

where Coleman's argument fatally parts company with the Opinion is as to the nature of the conduct that triggered Smith's and Frierson's liability to Coleman in the first place.

Before this opinion turns to that dispositive factor, however, it is worth spending a moment or two on Coleman's other arguments. Though they might have some force if considered in a vacuum, they are really a sideshow rather than the main event.

First, Coleman Mem. [2–3] essays to downplay the effect to be given to *Kolar v. County of Sangamon*, 756 F.2d 564 (7th Cir.1985), and most particularly *Kolar*'s n. 7 (756 F.2d at 569), by pointing to general respondeat superior doctrine as to private employers in Illinois. According to Coleman that doctrine renders *Kolar*'s n. 7 inapplicable here, and that footnote statement in *Kolar* is also said to be a weak reed to rely on because it is both dictum and unsupported by the cases the Court of Appeals cites. Were *Kolar* and its applicability the critical issue, our Court of Appeals could itself decide (after all, *this* case is now on appeal) whether it chooses to disavow its statement in *Kolar*. It is really not for this Court to make that judgment.

Second, Coleman Mem. [4] points to *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th Cir.1984) as assertedly inconsistent with *Kolar*'s n. 7. It is true (1) the Wisconsin municipal indemnification statute at issue in *Bell* (Wis.Stat. § 895.46(1)(a)) also spoke in terms of "scope of employment" and (2)

---

4. Coleman's counsel does not explain how, having successfully urged that conclusion on this Court (as reflected in the Opinion of April 30, 1985), he can have drafted and filed the current indemnification motion on May 16 in good conscience (although the motion is styled as jointly filed by Coleman, Smith and Frierson, it is signed by Coleman's lawyer).

5. Frierson, who served as Chief of Police at the time of the conduct giving rise to his liability, also seeks indemnification under Ill.Rev.Stat. ch. 24, ¶ 1–4–6. That statute provides for indemnification of a police officer by an employing municipality of up to $100,000 for any judgment recovered against him as a result of injury

he may inflict on persons or property in the performance of his duties as a police officer, "except where the injury results from the wilful misconduct of the policeman." That exception is plainly brought into play by the discussion in the text. Frierson thus falls outside the express terms of the statute.

1. This is not the first time Coleman's counsel has (for some inexplicable reason) filed a memorandum without numbering the pages. Accordingly this Court has done the numbering, and this memorandum order will cite to Coleman's Memorandum in the form shown in the text.

indemnification of punitive damages was awarded in *Bell,* 746 F.2d at 1271. But the language of the Wisconsin statute was never addressed by our Court of Appeals. Instead *Bell, id.* at 1271 n. 78 relied on the *admission* by Milwaukee's lawyer that the City was obligated to indemnify the employees for whatever damages were assessed against them. As *Bell, id.* at 1271 said:

> The City does not contend that Section 895.46 does not apply to punitive damages. Rather, the City argues that the punitive damages rule of *City of Newport* precludes municipal liability irrespective of Wisconsin law, so that the City is not responsible for the punitive damages of Grady, Johnson, and Shaffer. This contention, however, directly conflicts with the recognition in *City of Newport* that some state indemnification statutes exclude indemnification for "malicious or willful misconduct by employees," 453 U.S. at 269 n. 30, 101 S.Ct. at 2761 n. 30, and that these limited statutes do not shift the liability from the offending official to the municipality for such conduct. Wisconsin does not so limit its indemnification law. The obvious implication is that, regardless of the willfulness of the conduct at issue, an unlimited indemnification statute superimposes upon the common law a state-created rule which shifts the liability to the municipality.

Thus the Court of Appeals in *Bell* had no occasion to construe the Wisconsin statute, but instead accepted the concession by Milwaukee's lawyer as to the statute's coverage.

But both the previous-discussed questions are really beside the mark. Coleman's Memorandum prefers to forget his own insistence that the statutory test is one of "scope of employment." And on that score, Opinion at 1283–1284 makes it plain that Smith and Frierson were grinding their own axes and not that of the

Village of Robbins ("Robbins") when they violated Coleman's constitutional rights.[2] As Opinion at 8 summarized Coleman's factual claims on which liability was grounded:

> [Coleman] maintained Robbins itself— through its Board of Trustees ("Board") —appointed him to the post of Special Investigator and gave him his mandate. Smith and Frierson then deliberately thwarted Board's purposes by persecuting him because Smith was afraid Coleman would uncover Smith's past criminal conduct.

What Coleman actually complained of— and what the jury awarded him damages for—was that Smith and Frierson were deliberately faithless (not faithful) to the command of their master, Robbins. That is the exact opposite of the respondeat superior concept, and it is indeed a situation in which the very Illinois authority relied on by Coleman (*Sunseri v. Puccia,* 97 Ill. App.3d 488, 493, 52 Ill.Dec. 716, 721, 422 N.E.2d 925, 930 (1st Dist.1981)) would negate municipal liability.

In sum, the *actual* conduct of Smith and Frierson that produced the jury award in Coleman's favor simply cannot be characterized as having been within their "scope of employment." That being so, Section 9–102 does not come into play, even without reference to *Kolar*'s reading of that statute. Coleman's motion for reconsideration is denied.

## SUPPLEMENT TO MEMORANDUM ON RECONSIDERATION

When this Court announced in open court its October 28, 1985 denial of the motion by Samuel Coleman ("Coleman") for reconsideration of this Court's September 30, 1985 memorandum opinion and order (the "Opinion"), counsel for Marion Smith ("Smith") and Gordon Frierson ("Frierson") advised they had recently joined in the Coleman motion for reconsideration. Frierson's mo-

---

**2.** Coleman Mem. [4] misleadingly points only to part of the Complaint's allegations (and conclusory ones at that), wholly ignoring the careful analysis in Opinion at 1283–1284 of the Com- plaint's more specific allegations, the jury instructions and—perhaps most important—the *factual* presentation to the jury, which refuted any "scope of employment" notion.

tion has also reasserted his reliance on Ill.Rev.Stat. ch. 24, ¶ 1–4–6 as a basis for indemnification.

This supplement to the October 28 memorandum order will confirm that this Court's reasons for denial of reconsideration on Coleman's motion apply with equal force to the comparable motions by Smith and Frierson. In addition, the reasons stated in the October 28 memorandum order reconfirm the inapplicability of the Illinois statute relied on by Frierson—a subject first dealt with in the Opinion at 1284 n. 5.

Accordingly Smith's and Frierson's motions for reconsideration are denied as well.