James P. HOUK, Jr., et al., Plaintiffs,

v.

VILLAGE OF OAK LAWN, et al., Defendants.

No. 86 C 139.

United States District Court, N.D. Illinois, E.D.

Oct. 31, 1986.

James J. Conlon, Conlon & Kerstein, Chicago, Ill., for plaintiffs.

Sarah R. Wolff, Bruce W. Boyd, Sachnoff Weaver & Rubenstein, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

James P. Houk, Jr. ("Houk") and John Murdoch ("Murdoch") are Village of Oak Lawn ("Village") police officers. They have sued Village, its Board of Fire and Police Commissioners ("Board")[1] and its Chief of Police John J. Haberkorn ("Haberkorn"), charging the failure to promote plaintiffs to sergeants' positions violated their rights under 42 U.S.C. § 1981 ("Section 1981"),[2] 42 U.S.C. § 1983 ("Section 1983"),[3] 42 U.S.C. § 1985(3) ("Section 1985(3)") and the First Amendment.[4] Houk and Murdoch seek promotions with full back pay, seniority and pension rights, as well as punitive damages.

Defendants now move for summary judgment under Fed.R.Civ.P. ("Rule") 56.[5] For the reasons stated in this memorandum opinion and order, their motion is granted as to plaintiffs' Section 1985(3) and deprivation-of-property claims and as to plaintiffs' punitive damages prayer, but denied in all other respects.

---

1. Board members Frank Kaufmann, Richard Ryan and George Sinadinos were also originally named as defendants but were voluntarily dismissed May 30, 1986. Though R.Mem. 2 n. 1 appears to assume Board itself is no longer a defendant (or never was one), the Complaint did name Board as well as its three individual members as defendants—and only the individuals have been dismissed. However, neither side has addressed the question whether Board is a legal entity capable of being sued. This opinion simply assumes arguendo that it is.

2. P.Mem. 14 n. has now withdrawn the clearly unsustainable Section 1981 claim.

3. Plaintiffs allege violations of the Due Process (deprivation of property) and Equal Protection Clauses as predicates for their Section 1983 claim.

4. Two points are in order here. First, plaintiffs must look only to Section 1983 and not to some misguided notion of constitutional tort. Consequently any "First Amendment" reference in the Complaint cannot be viewed as independently viable. Second, as this Court has frequently had occasion to note, in Section 1983 cases (by definition targeted against state actors) it is imprecise to invoke Bill of Rights provisions (by definition directed only against the federal government). Instead all such Section 1983 claims are really grounded in the Fourteenth Amendment, construed to incorporate Bill of Rights guaranties. Nonetheless, where as here plaintiffs advance direct Fourteenth Amendment claims (under the Due Process and Equal Protection Clauses) and derivative claims (under that Clause's incorporation of the First Amendment), it remains useful to speak as though the Bill of Rights provision were directly at issue.

5. Defendants move alternatively for dismissal under Rule 12(b)(6). Plaintiffs' response is labeled "Plaintiffs' Answer Brief in Opposition to Defendants' Motion To Dismiss"—yet they too tender supporting affidavits and exhibits as well. Because both sides have thus submitted materials outside the pleadings for this Court's review, defendants' dismissal motion will be converted to Rule 56 treatment (see the last sentence of Rule 12(b)).

## Facts [6]

Murdoch has been a Village police officer since 1961 (Murdoch Aff. ¶ 1), and Houk since 1971 (Houk Aff. ¶ 1).[7] "At all times prior to and during [their] employment," Village—through Board members, Police and Fire Commissioners and plaintiffs' superiors—has "always stated and represented . . . that all promotions were based upon validly administered and graded tests and job performance . . . [and] conducted in accordance with the Rules of the Board of Police and Fire Commissioners" ("Board Rules") (Houk-Murdoch Aff. ¶ 1).

■ In April 1981 both Murdoch and Houk took an examination (the "1981 Exam") to qualify for promotion to sergeants' positions (*id.* ¶ 2). Based on the 1981 Exam results Murdoch was ranked fourth and Houk fifth on a posted eligibility list for promotion (the "1981 List") (*id.;* D.Mem.Ex.A). Each of the three officers ranked ahead of Houk and Murdoch was promoted during the next 20 months. No other officer from the 1981 List was ever promoted to sergeant (Houk-Murdoch Aff. ¶ 2). Under Rule 56(e) two Complaint allegations should not really be given effect on the current motion (see n. 6):

1. In the 1983–84 period there were unfilled vacancies in the sergeant ranks (Complaint ¶ 8).

2. In June 1983 Haberkorn recommended Murdoch be promoted but Board refused to do so (Complaint ¶¶ 9, 11).[8]

Nonetheless, because defendants credit those allegations for purposes of their waiver and laches arguments, this opinion will accept them for argument's sake.

In 1984 a second promotional examination was offered (the "1984 Exam"). Both Murdoch and Houk took the 1984 Exam: its written portion in June 1984 and its oral portion in September 1984 (Houk-Murdoch Aff. ¶ 2; D.Mem.Ex. B; Olson Aff. ¶ 3). In November 1984 the 1984 Exam results were posted in the "1984 List": Murdoch was ranked sixteenth and last, while Houk did not reach the passing grade of 70 and therefore was not ranked (Houk-Murdoch Aff. ¶ 2; D.Mem.Exs. K, M).

On December 1, 1984 the two top-ranking officers from the 1984 List were promoted (D.Mem. Ex. M; Houk-Murdoch Aff. ¶ 2). When Houk expressed surprise to Commander of Special Services Robert Scholtes that no officers had been promoted from the 1981 List since sometime in 1981, yet two were immediately promoted from the 1984 List, he was told he would

---

6. Rule 56 principles impose on the party moving for summary judgment the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). For that purpose this Court must view the evidence in the light most favorable to the nonmovant—in this case plaintiffs (*Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)). But there are serious problems with plaintiffs' submissions:

1. Although each has offered his own "affidavit" in response to the current motion, in many respects the affidavits have not dealt at all with allegations necessary to plaintiffs' claims but merely set out in the Complaint (a dereliction in the face of the clear directive of Rule 56(e)). To that extent the unverified Complaint cannot be credited on the present motion.

2. Even the matters dealt with in the "affidavits" flout the other Rule 56(e) requirement that affidavits "shall set forth such facts as would be admissible in evidence" (it must always be remembered that summary judgment is a substitute for trial, and affidavits must be judged by the same standards as on-the-stand testimony). Instead plaintiffs' counsel have included broad, generalized and conclusory statements, often lacking in foundation and otherwise inadmissible.

This is all of a piece with the careless lawyering evidenced throughout by plaintiffs' counsel. Though it is not really a court's function to pull counsel's chestnuts from the fire, this opinion later reflects the possible reprieve given to plaintiffs by nonvigorous application of Rule 56(e)'s plain standards.

7. Because the allegations of plaintiffs' affidavits are parallel in many respects, "Houk-Murdoch Aff. ¶—" will be used to refer to a statement found in the same paragraph of each affidavit.

8. This claim is not only unconfirmed by Murdoch's affidavit, but no exhibit is attached to the Complaint (despite the Complaint ¶ 9 reference to "Exhibit A, attached") to substantiate the allegation.

never be promoted to sergeant because he had "backed the wrong political party and its candidates for trustee" (Houk Aff. ¶ 5).[9] Similarly, Murdoch says he learned from "other officers and a Trustee" in the spring of 1985 he would never be promoted by Board because he had been politically active in supporting an unsuccessful candidate for trustee (Murdoch Aff. ¶ 5).

In the late spring or early summer of 1985 Houk and Murdoch heard rumors the promotional test might have been "rigged and tainted" (Houk-Murdoch Aff. ¶ 3).[10] Later they learned of an investigation of alleged fire department test rigging, which substantiated the rumor in their minds (*id.*). Houk and Murdoch then consulted an attorney, who in turn met with Village attorneys in July 1985 to "try to iron out differences and have certain questions answered as to why the 1981 List was frozen and the 1984 List which was posted resulted in two immediate promotions being made" (*id.*). When nothing came of those discussions, this action was filed January 8, 1986 (*id.* ¶ 4).

Since that filing Murdoch and Houk have learned that in another lawsuit certain testimony (the "Olson Statement") had been given May 17, 1983 by Irene Olson, Board's Chief Examiner and Secretary since September 1, 1982 (Houk-Murdoch Aff. ¶ 4). In the Olson Statement she describes alleged improprieties in the grading of various examinations administered by Board. Although the other lawsuit dealt with al-

leged Village fire department test rigging, Olson Statement 15–16 also said the results of the then-most-recent police sergeant promotional examination (that would have been the 1981 Exam) had been altered so as to place lower-ranked individuals higher on the eligibility list.[11]

### Contentions of the Parties

Houk and Murdoch urge defendants' failure to promote them to sergeants' positions violates:

1. the Due Process Clause because defendants "wrongfully deprived [plaintiffs] of a property right in the job of sergeant ..." (Complaint ¶ 14) (the "deprivation-of-property claim");

2. the Equal Protection Clause "due to defendants' failure to respect and promote on the basis of the April 1981, test and due to favoritism shown other police officers who were promoted due to non job related consideration [sic]" (*id.*) (the "denial-of-equal-protection claim") [12];

3. Section 1985(3) because "[t]he above constitutional and civil rights violations were unreasonably conspired and engaged in by defendants under color of state law, namely the Civil Service Statutes, and under the use of local custom in the Village of Oak Lawn" (*id.* ¶ 15); and

4. the First Amendment (see n. 4) because the "refusal and failure to promote ... are politically motivated to punish

---

9. Both this and the final sentence in this paragraph pose obvious hearsay problems. In this sentence, the Scholtes statement might perhaps be nonhearsay as to Village under Fed.R.Evid. 801(d)(2)(D) (quaere, however, whether it was "concerning a matter within the scope of [Houk's] ... employment"), but it could be more problematic even in those terms as to Haberkorn (is Scholtes Haberkorn's "agent or servant"?). It is unnecessary to parse the evidentiary situation as to the final sentence: On its face it is even more attenuated in terms of possible admissibility. Despite those evidentiary problems, both sentences will be considered on the present motion.

10. Again the statements in this and the next sentence of this paragraph offer both the admissibility problems identified in n. 6 and serious

hearsay difficulties. However, because they are admissible for a nonhearsay purpose on defendants' arguments of laches and waiver, this opinion will pass over the n. 6 problems for purposes of analysis. As a side issue, plaintiffs do not specify whether it was the 1981 Exam or the 1984 Exam they heard had been rigged, but it is now clear they refer to the 1981 Exam.

11. Plaintiffs do not explain how this part of the Olson Statement meets hearsay objections either.

12. No Complaint allegation asserts the basis for the claimed favoritism, but P.Mem. 12–13 (emphasis added) now says Houk and Murdoch "were not promoted due to a classification based on *political* non job related factors...."

and discipline plaintiffs and discourage others from forming similar political beliefs and associations and to punish plaintiffs for failing to perform non job related functions in their off time" (*id.*).

Defendants counter with three colorable arguments: [13]

1. This action should be dismissed in its entirety because Houk and Murdoch:

(a) waived their right to promotion under the 1981 List by taking the 1984 Exam and

(b) even absent waiver, are barred by laches from asserting their claims because of unreasonable delay in doing so, with resulting prejudice to defendants.

2. Plaintiffs' deprivation-of-property and Section 1985(3) claims should be dismissed for failure to state a claim upon which relief may be granted.

3. Plaintiffs' punitive damages demand should be stricken because a municipality and employees acting in their official capacity are immune from such damages.

This opinion will first examine the waiver and laches arguments, then turn to the merits of the two challenged claims. Finally it will briefly discuss the availability of punitive damages.

### Waiver and Laches

Both the waiver and laches arguments can be disposed of quickly in a single discussion, for their common premise (see D. Mem. 4–9) involves a disputed factual issue. D.Mem. 6 says Houk and Murdoch were "aware of facts giving rise to the instant action as early as 'mid–1983.'" If true, that would mean plaintiffs delayed some 2½ years (well after taking the 1984 Exam) before bringing this action.

But of what "facts" were plaintiffs aware? D.Mem. 8 says plaintiffs knew when they took the 1984 Exam (1) they had not been promoted from the 1981 List, (2) there were unfilled vacancies in sergeant positions and (3) despite the recommendation of Haberkorn, Board had declined to promote Murdoch. Consequently defendants liken this case to *DeGuiseppe v. Board of Fire and Police Commissioners*, 30 Ill.App.3d 352, 332 N.E.2d 405 (1st Dist. 1975), *cert. denied*, 425 U.S. 937, 96 S.Ct. 1669, 48 L.Ed.2d 178 (1976), where plaintiff was found (1) to have waived his claim to a promotion under an expired eligibility list by taking a later promotional examination and (2) to be guilty of laches when his delay in bringing suit had prejudiced the municipality/employer.

But defendants really do not address the critical dates—when Houk and Murdoch became aware of the facts establishing their actual claims. P.Mem. 7–10 asserts Houk and Murdoch did not learn until mid–1985 the politically-motivated *reason* why, and the unlawful *method* (altering of test results) by which, they were not promoted. Despite the already-identified evidentiary problems with plaintiffs' affidavits,[14] this Court will assume that to be true (for it cannot resolve a disputed factual issue against the nonmoving party in a summary judgment motion). Under those circumstances plaintiffs had no knowledge (or, for that matter, reason to know) of the political nature of their non-promotion before they took the 1984 Exam. Thus R.Mem. 6 n. 5 is plainly wrong in characterizing those allegations as "simply additional 'facts' of which plaintiffs became aware to 'prove' their cause of actions [sic]."

■ It follows there is no basis for finding Houk and Murdoch have waived their claims, for it is elemental one "cannot

---

**13.** D.Mem. 11–12 also contends plaintiffs should have stated their claims in separate counts (see Rule 10(b)). That proposition (doubtful at best) is certainly not a basis for summary judgment.

**14.** If Rule 56 principles were to be applied with full force against plaintiffs, they would lose on this issue too for failure of proof. That, how-

ever, would inevitably trigger a proper submission by plaintiffs' counsel. In the interests of judicial economy, this opinion will accept the current factual statement as adequate, but only on condition that plaintiffs' counsel cure the flawed evidentiary showing with further affidavits within 14 days.

waive a right before he is in a position to assert it." 28 Am.Jur.2d *Estoppel and Waiver* § 157 (1966) (footnote omitted). That is so because (*id.* § 158) (footnotes omitted):

No man can be bound by a waiver of his rights unless such waiver is distinctly made, with full knowledge of the rights which he intends to waive; and the fact that he knows his rights and intends to waive them must plainly appear. Ignorance of a material fact negatives waiver....

Nor is there any basis for the operation of laches (which by definition requires unreasonable delay, *In re Chicago, Rock Island and Pacific Railroad Co.*, 788 F.2d 1280, 1284 (7th Cir.1986)), because plaintiffs timely asserted their politically-based claims after they learned the facts establishing those claims. With those issues out of the way, this Court now turns to the merits of the two challenged claims.

### *Section 1985(3)*

■ After Complaint ¶ 14 states plaintiffs' alleged deprivation-of-property and denial-of-equal-protection claims, Complaint ¶ 15 goes on:

The above constitutional and civil rights violations were unreasonably conspired and engaged in by defendants under color of state law, namely the Civil Service Statutes, and under the use of local custom in the Village of Oak Lawn.

Even apart from the doubtful sufficiency of that allegation (*Quinones v. Szorc*, 771 F.2d 289, 289 n. 1 (7th Cir.1985)), Houk and Murdoch have not asserted the required "class-based, invidious animus" on defendants' part (*Munson v. Friske*, 754 F.2d 683, 694–95 & n. 8 (7th Cir.1985), citing *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Brown*

*v. City of Chicago*, 573 F.Supp. 1375, 1380–81 (N.D.Ill.1983)). And that would be true even were this Court somehow to read the Complaint as charging a politically-motivated animus as a basis for plaintiffs' equal protection claim.[15] *Grimes v. Smith*, 776 F.2d 1359, 1366 (7th Cir.1985) (citations and footnote omitted) teaches Section 1985(3) does not:

include conspiracies other than those motivated by a racial, class-based animus against "Negroes and their supporters." Thus, we join the conclusion of the Fourth Circuit ... that § 1985(3) does not reach nonracial political conspiracies.

In sum, plaintiffs' Section 1985(3) claim is as ill-founded as the Section 1981 claim they advanced and then abandoned. It too is dismissed.

### *Deprivation of Property*

Complaint ¶ 14 says defendants violated the Due Process Clause by "wrongfully depriv[ing Houk and Murdoch] of a property right in the job of sergeant." *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir.1985) described the requirements for such a claim:

To make out a case under the clause one must ... show first that one was deprived of life, liberty, or property, and second that the deprivation was brought about without due process of law.[16]

Addressing the first (property right) element, P.Mem. 12 says:

Here plaintiffs' claim of entitlement to a promotion as asserted in the complaint is based upon representation [sic] made over the years to them as police officers and as expressed in [Board Rules 150.8 and 150.24] governing promotions.

Rule 150.24 purportedly says no eligibility list shall expire or be stricken while a va-

---

**15.** As the Complaint is structured, its allegations as to defendants' alleged political motivations for not promoting plaintiffs are included only as part of the First Amendment claim and not the denial-of-equal-protection claim.

**16.** [Footnote by this Court] Nowhere does the Complaint allege the deprivation of property

was without due process. From the arguments in plaintiffs' memorandum, that omission seems to have been unintentional (some more sloppy drafting by plaintiffs' counsel) and not because plaintiffs intended to assert a substantive due process claim (as D.Mem. 12 n. 2 assumes).

cancy exists.[17] Rule 150.8 (emphasis added) provides in part:[18]

> The Commission shall provide for promotion in the Fire and Police Services on the basis of ascertained merit and seniority in service and examination, and *shall* provide in all cases where it is practicable that vacancies shall be filled by promotion. All examinations for promotion shall be competitive among such members of the next lower rank as desire to submit themselves to such examinations, and all promotions *shall* be made from the three having the highest rating.

According to P.Mem. 11–12, the mandatory "shall" compels Board and the Police Chief to fill vacancies, as they are created, from among the three officers with the highest rank. In addition, P.Mem. 12 complains vacancies existed when the 1981 List expired, in contravention of Rule 150.24 (though plaintiffs have not really shown that, as earlier indicated).

■ But even were those things true, it still would not follow Houk or Murdoch had the requisite property interest in promotion. Under Rule 150.8 defendants could have filled vacancies with *anyone* from among the top three-ranked officers on the 1981 List. Even had defendants filled each vacancy immediately from among the top three-ranked officers, each plaintiff still would have had no guaranty of promotion. For that reason both Houk and Murdoch simply had a "unilateral expectation" (*Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)) of, rather than an "entitlement" to, promotion.

That was the conclusion reached in *Hermes v. Hein*, 479 F.Supp. 820, 824 (N.D. Ill.1979) (emphasis in original):

> The statute [Rule of Three] clearly allows the Board of Fire and Police Commissioners to promote any of the top three candidates and does not restrict their discretion in choosing from among the top three candidates. It is clear that plaintiff ... cannot complain that he was denied a promotion to which he was entitled since even if he had been among the top three candidates for promotion or even if he had been ranked number one on the eligibility roster, he alleges no basis for finding that he was entitled to a promotion as a result of that *ranking*. Clearly, under the statute he would have no more than a unilateral expectation of promotion.

See also *McCoy v. Board of Fire and Police Commissioners of the Village of Hanover Park*, 79 Ill.App.3d 742, 744, 35 Ill. Dec. 70, 72, 398 N.E.2d 1020, 1022 (1st Dist.1979).

Nor, for the same reason, is an entitlement to promotion created by defendants' alleged representations that promotions would be in accord with test performance and Board Rules (Houk-Murdoch Aff. ¶ 1).[19] At best those representations created a legitimate expectation defendants would comply with the Rule of Three as embodied in Rule 150.8, not that defendants would necessarily promote Houk and

---

**17.** P.Mem. 12 referred to Rule 150.24 as having been attached to the Memorandum. It was not, let alone its having been offered in proper evidentiary fashion. Once more this opinion will, for argument's sake, bend the Rule 56 requirements by crediting plaintiffs' characterization—though in this instance that clearly gives plaintiffs' counsel more than their due (how is this Court to know whether their statement accurately reflects what Rule 150.24 really says?). It should also be noted Rule 150.8 is not properly proved, though here both sides agree to its content.

**18.** According to D.R.Mem. 12–13, Rule 150.8 merely codifies Ill.Rev.Stat. ch. 24, ¶ 10–2.1–15 (the "Rule of Three"), which sets out promotional rules for municipalities other than home rule units. Examination of Rule 150.8 reveals it does indeed track the language in the Rule of Three. There is a separate provision governing larger municipalities (Ill.Rev.Stat. ch. 24, ¶ 10–1–13), but the language is only "slightly different." *Bigby*, 766 F.2d at 1056.

**19.** That account is very different from the allegation in Complaint ¶ 14:

> [Defendants] stated [plaintiffs] would be promoted to such rank in the order of their position on the posted list immediately as openings in that rank were created or existed.

Murdoch. Faced with a similar type of argument, *Bigby*, 766 F.2d at 1056–57 said:

> But these sergeants did not have a property interest in the rank, which they had not yet attained, of lieutenant. It is true that state law requires promotions of government employees, including policemen, to be "on the basis of ascertained merit and seniority in service and examination." ... The statute and ordinance create an expectation that the examinations used for promotions in the civil service will be fair but, as the Illinois courts have held, not so firm and definite an expectation as to be "property" in the constitutional sense.
>
> \*    \*    \*    \*    \*    \*
>
> Furthermore, the promoting officials are authorized to choose among the highest-rated applicants, and no criteria are provided for the choice.

In short, plaintiffs had only an expectation of, and not an entitlement to, promotion. They do not have a protectible property right in Fourteenth Amendment terms.

### Punitive Damages

 D.Mem. 15–16 asks this Court to dismiss the claim for punitive damages against the Village and Haberkorn based on *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981), which held municipalities immune from punitive damages under Section 1983. That is of course unanswerable, and plaintiffs are understandably silent on the point. D.Mem. 15 also urges Haberkorn, though not a municipality, is likewise immune because he was acting in his official capacity in not promoting plaintiffs. Plaintiffs inexplicably do not respond to that argument either.

Had plaintiffs' counsel done his homework, even brief research would have uncovered *Kolar v. County of Sangamon*, 756 F.2d 564, 567–69 (7th Cir.1985), with its discussion of the distinction between official-capacity and individual-capacity suits against public employees. Though an examination of the Complaint in *Kolar* terms discloses it falls within the former category as to Haberkorn, *Kolar, id.* at 569 n. 7 suggests punitive damages might perhaps still lie against him (see also this Court's opinion in *Coleman v. Frierson*, 618 F.Supp. 1280, 1282–83 (N.D.Ill.1985)). However, plaintiff's skimpy prayer (d) for relief ("That malice be declared the jist [sic] of this action and that plaintiffs be awarded punitive damages") simply does not do the job.

Defendants do not address the appropriateness of punitive damages against Board, apparently believing Board is not a defendant in this action. But Board too, as a local governmental body, comes within the *City of Newport* doctrine. See *Planned Parenthood Association v. Chicago Transit Authority*, 767 F.2d 1225, 1233–34 (7th Cir. 1985).

There is a limit to the extent counsel's work should be done for them. This Court dismisses the punitive damages claim against all defendants.

### Conclusion

There is a genuine issue of material fact as to whether plaintiffs waived, or are barred by laches from asserting, their claims of defendants' improper political motivation.[20] Summary judgment on those claims is thus inappropriate (though plaintiffs cannot recover punitive damages in any event).

But as for plaintiffs' Section 1985(3) and deprivation-of-property claims, there is no genuine issue of material fact and defendants are entitled to a judgment as a matter of law. Those claims are dismissed.

---

**20.** This holding is conditional on plaintiffs' counsel's compliance with n. 14.